## Atlantic Greyhound Corporation v. Franklin.

Jan. 25, 1946.

Clyde R. Levi, John T. Diederich, William Blanton and Keenon & Odear for appellant.

John McKenzie and Arthur T. Bryson for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Reversing.

On the morning of February 13, 1943, the streets in Catlettsburg were covered with ice and were in a slippery condition. Appellee, E. E. Franklin, was a passenger on an Ohio Valley bus (hereinafter referred to as the Valley bus) which was traveling north on Oakland Avenue in Catlettsburg. The bus of the Atlantic Greyhound Corporation (hereinafter referred to as the Greyhound bus) was going south and while turning into Oakland Avenue from 31st Street skidded on the icy street into the Valley bus. Franklin sued the two bus companies for $50,896.91 for personal injuries which it is alleged he suffered as a result of the collision.

On a trial in February 1944, a verdict was directed in favor of the Valley bus, but the case went to the jury as to the Greyhound, resulting in a verdict of $14,824.91 for Franklin. In asking a reversal of the judgment entered on the verdict the Greyhound insists that: 1. A verdict should have been directed in its favor. 2. The damages are excessive. 3. The instructions are erroneous.

Louisa Street and Oakland Avenue in Catlettsburg are parallel and run north and south and the latter is 35 feet in width. Thirty-First Street runs east and west and from its intersection with Oakland Avenue to its intersection with Louisa Street is a distance of 170 feet.

All three streets are paved and practically level. The accident occurred about 10:30 A. M., on Oakland Avenue just a few feet south of its intersection with 31st Street. The Greyhound traveling south on Louisa Street turned to the left into 31st Street and proceeded 170 feet to its intersection with Oakland Avenue where the driver attempted to turn to the right into Oakland Avenue. The bus skidded on the ice across Oakland Avenue, the front part striking near the front of the Valley bus, the driver of which had pulled his right wheels over the curb and upon the sidewalk in an effort to avoid the collision when he saw the Greyhound starting to skid.

John Ross was parking his car on Louisa Street at a point 500 feet from its intersection with 31st Street. He testified that when the Greyhound passed him it was traveling 30 or 35 miles per hour and when it turned to the left into 31st Street the rear end skidded or swerved to the right and the bus went out of sight. Fred W. Gestling, who made certain measurements and drew to scale a map filed in the record showing streets and buildings, testified that from the point where the Greyhound went out of Ross' sight as it turned into 31st Street to the point of the accident as it turned right from 31st Street into Oakland Avenue, the bus traveled from 200 to 210 feet.

Marvin Lewis, the Greyhound's driver, testified that when he passed the point on Louisa Street where Ross was parking that his bus was making from 15 to 20 miles per hour; that he slowed down to 10 or 12 miles per hour to turn into 31st Street, which he did without skidding; that he did not increase his speed during the 170 feet he traveled on 31st Street to its intersection with Oakland Avenue; that he turned his front wheels to the right in entering Oakland Avenue but his rear wheels did not follow and he skidded to the left. He applied his brakes which did no good and he released them, and his bus skidded on the icy street and collided with the Valley bus; that both buses had practically stopped at the time of the collision.

Lewis is corroborated by Lillie Holland and Mrs. Chet McKnight, passengers on his bus, that he did not skid at the first turn. Harry Hudson, the driver of the Valley bus, corroborated Lewis as to how the accident happened and testified that Lewis was making only 5 or 10 miles an hour when he first saw him 100 or 140 feet

away and Lewis' speed did not increase; that he (Hudson) was driving at about the same rate and pulled up on the sidewalk when the Greyhound started skidding; that the Valley bus did not skid. Both drivers say that the cause of the Greyhound skidding was the ice on the street, and Hudson testified that Lewis handled the Greyhound in the same manner in which he handled the Valley bus. The buses were large and practically the same size and the tires on the Greyhound were eleven inches in diameter.

Appellee Franklin was seated on the left side in about the middle of the Valley bus. When he first saw the Greyhound it was 15 or 20 feet away. He did not see it skid and it was "coming right straight * * * it was coming in, what you might say a diagonal form," but he did not know anything about the speed of the Greyhound. Mary Altic, a passenger on the Valley bus, testified the Greyhound was traveling "very slow" when it struck the Valley bus. Iva Stowers, another passenger on the Valley bus, testified that the Greyhound was 100 feet away when she first saw it and it was going 5 or 10 miles an hour and the Valley bus was just barely moving. Cora and Lillie Holland, passengers on the Greyhound, testified that it was going very slowly when it turned the second corner. Mrs. Chet McKnight, another passenger of the Greyhound, testifed that it was going about 5 miles per hour around the second corner.

It is not disputed that the street was slippery on account of ice and not a witness testified as to any negligent handling of the Greyhound at the place of the accident. On the contrary, all witnesses who testified as to how the bus was being operated at this point, stated the speed was either "slow," "very slow," or that it was going at a speed of 5 to 10 miles an hour. Ross, who testified it passed him making 30 or 35 miles an hour on Louisa Street was 700 feet from the point of the accident, which was 200 or 210 feet from where the bus passed out of his sight. It is therefore apparent that Ross' testimony had no probative value as to the speed or the manner in which the Greyhound was being operated at the place of the collision. The evidence is uncontradicted that there was no negligence on the part of the driver of the Greyhound and that the sole cause of its skidding into the Valley bus was the icy condition of the street.

It is the settled rule in his jurisdiction that the operator of a motor vehicle is not liable for injuries resulting from the skidding of same on an icy street in the absence of evidence that the skidding resulted from his negligence. Arthur v. Rose, 289 Ky. 402, 158 S. W. 2d 652; Risen v. Consolidated Coach Corporation, 274 Ky. 342, 118 S. W. 2d 712, and the authorities therein cited. Indeed, this seems to be the general rule as will be seen from an examination of the annotations in 113 A. L. R. 1002. While the driver must take into consideration the slippery condition of the highway, yet if the evidence shows that the accident resulted from a condition of the road and not from any negligence of the driver, no liability results, since it is common knowledge that an automobile may skid on a slippery highway without any negligence on the part of the operator. Gilreath v. Blue & Gray Transportation Co., 269 Ky. 787, 108 S. W. 2d 1002.

Appellee admits the rule to be that the skidding of an automobile on a slippery street or highway is not negligence per se, but insists that it is for the jury to draw inferences from the skidding and to say whether or not it was superinduced or accelerated by the driver, citing such domestic cases as Tente v. Jaglowicz, 241 Ky. 720, 44 S. W. 2d 845; O'Neil & Hearne v. Bray's Adm'x, 262 Ky. 377, 90 S. W. 2d 353; Gilreath v. Blue & Gray Transportation Co., 269 Ky. 787, 108 S. W. 2d 1002, and such foreign authorities as Stanford v. Holloway, 25 Tenn. App. 379, 157 S. W. 2d 864; Nafziger v. Mahan, Mo. App., 119 S. W. 1080; Philpot v. Fifth Avenue Coach Co., 142 App. Div. 811, 128 N. Y. S. 35; 1 Blashfield, Cyclopedia of Automobile Law and Practice, sec. 653, p. 463. But in the instant case all the witnesses who saw the accident and noticed the speed of the Greyhound and the manner in which it was being operated immediately preceding the accident testified to facts which conclusively show its driver was guilty of no negligence and that the sole cause of the accident was due to the slippery condition of the street. Therefore, there were no inferences the jury could draw from the skidding that the driver was negligently operating the vehicle.

Having reached this conclusion, it is unnecessary for us to pass on the questions of whether there was evidence upon which to base an instruction on permanent

injuries, or whether the verdict is excessive, since in the event of another trial we do not know what the evidence will show as to these questions.

Complaint is made that the instructions after setting out the duties of the bus driver then made appellant liable if he "failed to observe one or more of these duties" when they should have read if he "negligently failed to observe one or more of these duties." Without deciding whether or not the instructions given the jury were prejudicially erroneous, we think in the circumstances presented in this record [skidding on ice] the jury should have been told that before they could find for the appellee they must believe appellant's driver negligently failed to observe one or more of the duties imposed upon him. In the event of another trial and additional evidence is introduced which is sufficient to take the case to the jury, the court will insert the word "negligently" in the instructions as above indicated which will necessitate him defining "negligence" as "the want of ordinary care."

The judgment is reversed with instructions to direct a verdict in favor of Greyhound should the evidence be substantially the same on another trial. All other questions are expressly reserved.