No. 85-51

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

KERRY ELDON WHITE,

        Cross-Claimant and Appellant,

   -vs-

VIC PHILLIPS and FRANCIS PHILLIPS as
successors in interest to IKE V. PHILLIPS,

        Cross-Defendants, Respondents and
        Cross-Appellants.

_____

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas Olson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Goetz, Madden & Dunn; William J. Madden, Jr. argued,
        Bozeman, Montana

    For Respondent:

        Keefer, Roybal, Hanson, Stacey & Jarussi; Calvin J.
        Stacey argued, Billings, Montana

_____

                 Submitted: October 8, 1985

                 Decided: January 23, 1986

Filed: **JAN 23 1986**

_____
                 Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Kerry Eldon White was the driver of one of two cars involved in a fatal accident on September 7, 1980. White was sued by his passengers, Randy Simonson and Dave Rasmussen, as was the driver of the other automobile, Ike V. Phillips. White also filed a cross-claim against Phillips. The various lawsuits were consolidated, but on plaintiff-passengers' request, trial on the liability issues was bifurcated from that on damages. Following trial by jury, White's negligence was found to be the proximate cause of 40% of his passengers' injuries. Phillips' negligence was responsible for the other 60%. The conduct of both White and Phillips was also found to be willful or wanton. Pursuant to instructions given the jury, White's cross-claim against Phillips was denied because White was found to be guilty of willful or wanton conduct. White appeals the judgment entered by the Eighteenth Judicial District Court on his cross-claim against Phillips. We vacate the judgment and remand for a new trial.

The accident occurred at approximately 2:30 a.m. on the Canyon Ferry Road eight miles east of Helena. Ike Phillips was driving east to his family's home on Canyon Ferry Lake. He had been drinking and was driving at a high rate of speed. His vehicle failed to negotiate a curve, somersaulted and landed upside-down in the borrow pit on the south side of the road. The vehicle landed headed in a westwardly direction.

Very shortly thereafter the White vehicle, also proceeding east on Canyon Ferry Road, came upon the scene. As White topped the hill immediately prior to the curve, he saw what appeared to be headlights in his driving lane. White testified that to avoid a collision, he drove his car into the ditch on the right (south) side of the road. On entering the ditch, White saw Phillips' car and tried to

2

regain the road, but crashed into the Phillips' vehicle. Phillips was killed. It is unknown which collision caused his death. All occupants of the White vehicle suffered injury.

In the pre-trial order, the passengers, Rasmussen and Simonson, claimed that defendant Phillips' negligence was the primary proximate cause of their injuries and that defendant White was negligent, if at all, to a slight degree. Cross-claimant White alleged that Phillips was "negligent and/or negligent as a matter of law;" that as a result of such negligence "a hazard or sudden emergency was created;" that White "was not negligent in responding to the hazard or sudden emergency;" and that if White were negligent in his response, his negligence was less than the negligence of Phillips which created the hazard or sudden emergency. Further, White alleged that Phillips' conduct was willful or wanton and that therefore, the doctrine of comparative negligence should not be applied to reduce White's claim.

Rather than joining in the pre-trial order, Phillips stated his contentions in a separate trial brief. However, that brief was incorporated into the pre-trial order by the following interlineation--"Phillips' contentions: Please refer to Phillips' trial brief." In his brief, Phillips maintained that he was not negligent, and that if he had been negligent, his negligence was not a proximate cause of the claimants' injuries. Phillips further alleged that White was negligent; that White's negligence was the sole proximate cause of White's, Rasmussen's and Simonson's injuries; and that White's negligence constituted a superseding and intervening cause cutting off Phillips' liability, if any. Finally, Phillips' brief listed two allegations in support of his claim against White:

1. White's driving abilities (including but not limited to perception and reaction capabilities) were substantially impaired by his use of alcohol and drugs; and

2. White drove his vehicle in a reckless and careless manner (speed).

The case was tried before a jury. At the close of the presentation of evidence, all parties submitted proposed instructions. Over Phillips' objections, the court agreed to give White's proposed comparative negligence instruction and an instruction that the comparative negligence doctrine does not apply if defendant's conduct is willful or wanton.

A special verdict form was prepared by White asking the jury to determine whether the conduct of Phillips was willful or wanton. Phillips again objected because it failed to ask the jury to determine whether Kerry White also acted willfully or wantonly. Phillips' objection was overruled and White's special verdict forms were adopted by the court.

After several hours of deliberation, the jury returned with questions for the court, one of which was:

Cases A and B [the claims of Simonson and Rasmussen against White and Phillips] Question 3 asks if Ike Phillips was willful or wanton, why isn't the question asked if Kerry White was willful or wanton. He is also a defendant.

In response, the court amended the special verdict forms to include a determination by the jury of whether White acted willfully or wantonly. The instruction on when the comparative negligence doctrine does not apply was unaltered. At the request of Phillips and plaintiffs, the court amended the pleadings and the pre-trial order to include a specific willful or wanton conduct charge against White.

White objected to these changes on several grounds, the most important being that the court lacks judicial power to amend instructions and verdict forms after the case has been tried, argued, submitted and deliberated upon if such amendments substantially and materially change the theory of

4

the case. White also requested the court to give an instruction on gross negligence and an instruction permitting the comparison of willful or wanton conduct with like conduct under the comparative negligence doctrine. Both requests were denied.

Thereafter, the case was returned to the jury for further deliberations. There were three special verdict forms before the jury. Form A involved the claim of passenger Simonson against White and the successors in interest to Phillips. Form B was for passenger Rasmussen's claim against the same individuals. Form C was for White's claim against the successors in interest to Phillips.

The jury found both Simonson and Rasmussen to be negligent, but held their negligence not to be a proximate cause of their injuries; found White's and Phillips' conduct to be negligent and willful or wanton; and divided the responsibility for Rasmussen's and Simonson's injuries between White and Phillips 40% and 60% respectively. Then, on White's cross-claim against Phillips, the jury found both individuals' conduct to be negligent and willful or wanton and held both individuals' conduct to be a proximate cause of White's injuries. However, pursuant to instructions on Form C, since the jury found White's and/or Phillips' conduct to be willful or wanton, the jury did not assign proportions of negligence to either of them. Therefore, White's willful or wanton conduct became an absolute defense to Phillips' willful or wanton conduct, barring any finding of liability on the part of Phillips for White's injuries.

Further facts will be developed as necessary for resolution of this case.

White appeals, raising the following issues:

5

1. Whether the District Court erred in amending the pleadings and special verdict forms to permit a finding of wanton or willful conduct on the part of Kerry White?

2. Whether the District Court erred in refusing to permit comparison of appellant's wanton and willful conduct with like conduct on the part of Phillips?

3. Whether the District Court erred in requiring appellant White to transcribe the entire trial court record, when only that part from settlement of jury instructions through taking of the verdict is necessary to determine the issues raised by this appeal?

Phillips also submits several issues on cross-appeal for this Court's consideration should we remand for a new trial.

1. Did the District Court err in granting White's motion in limine preventing Phillips from introducing any testimony relating to White's use of drugs on the day of the accident?

2. Did the District Court err in allowing Officer James Curtin of the Montana Highway Patrol to testify as an expert witness and express his opinion as to the estimated speeds of the vehicles driven by White and Phillips at the time of the accident?

3. Did the District Court err in allowing White to introduce testimony and exhibits relating to an experiment which he performed in an attempt to recreate the accident in question in light of the fact certain dissimilarities existed between the experiment and what actually occurred on the night of the accident?

4. Did the District Court err in submitting a "sudden emergency" instruction to the jury at the request of White?

5. Did the District Court err when it dismissed defendants "IKE V. PHILLIPS and the ESTATE OF IKE V. PHILLIPS" from the lawsuit on the first day of trial and

6

substituted in their place as defendants "VIC PHILLIPS and FRANCIS PHILLIPS AS SUCCESSORS IN INTEREST TO IKE V. PHILLIPS?"

As the final issue raised by cross-appellant Phillips is jurisdictional in nature, we will address it first. Phillips contends the trial judge erred when, on the first day of trial, he substituted "Vic Phillips and Francis Phillips as successors in interest to Ike V. Phillips" for defendants "Ike V. Phillips and the Estate of Ike V. Phillips."

We find no error in this substitution. Section 27-1-501, MCA, provides that a cause of action against a deceased may be brought "in the name of his representatives or successors in interest." See Muir v. Kessinger (D.C. Mont. 1940), 35 F.Supp. 116, 117. Since Ike Phillips was unmarried and childless at the time of his death, his parents are his successors in interest. Section 72-2-203(2), MCA.

This action was initially brought against Ike Phillips and his estate. Section 72-3-104(1), MCA, requires the appointment of a personal representative prior to the commencement of a claim against the estate of a decedent. Since there was no estate, no personal representative was appointed. Therefore, it became necessary to substitute the real parties in interest, Phillips' successors in interest, for his estate. Such a substitution is permitted under Rule 17(a), M.R.Civ.P., without adversely affecting any applicable statute of limitations.

### Appellant's Issues

#### I.

Initially, White contends Phillips failed to allege willful or wanton conduct on the part of White. Therefore, the trial judge erred when he amended the pleadings and special verdict forms to include such an allegation. We

agree the jury was improperly instructed, but for reasons different than those offered by White.

Phillips alleged in his trial brief that White acted in a _reckless_ manner. Reckless conduct has been found synonymous with willful or wanton conduct in numerous Montana cases. See for example, Mallory v. Cloud (1975), 167 Mont. 115, 535 P.2d 1270. In fact, Webster's International Dictionary defines "wanton" as "reckless, heedless or malicious." Cashin v. Northern Pac. Ry. Co. (1934), 96 Mont. 92, 110, 28 P.2d 862, 869. See also, W. Prosser, The Law of Torts § 34 (4th ed. 1971). Thus, by alleging reckless conduct, Phillips alleged that White's conduct was willful or wanton. To hold otherwise would be contrary to Montana's liberal pleadings law. Morse v. Espeland (Mont. 1985), 696 P.2d 428, 430, 42 St.Rep. 251, 252-253 and Rule 8, M.R.Civ.P.

Since Phillips' trial brief was incorporated by reference into the pre-trial order, his brief, and his allegation that White's conduct was reckless, became part of the pleadings. Therefore, it was proper to instruct the jury concerning Phillips' allegation that White's conduct was willful or wanton. However, those instructions came too late.

The original instructions did not include any reference to Phillips' affirmative defense that White's conduct was willful or wanton. Therefore, White was denied the opportunity to argue against that defense prior to the case going to the jury. The right to argue one's case as well as to argue in response to defenses raised by the other parties is essential to the litigant's right to have his case fairly presented to the jury. It includes the opportunity "to argue every material issue in a case upon which evidence has been introduced . . . ." King v. Kaplan (Cal. 1949), 211 P.2d 578, 580.

8

It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact. . . . For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions.

* * *

In a . . . trial, which is in the end basically a fact-finding process, no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment.

Herring v. New York (1975), 422 U.S. 853, 862, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593, 600. Therefore, since White was denied the opportunity to argue that his conduct was not willful or wanton, it was error for the trial judge to later amend the pleadings and special verdict forms to allow the jury to consider that issue.

This error alone resulted in substantial injustice to White. Therefore, the verdict should be set aside and a new trial granted. Section 25-11-102(7), MCA.

## II.

Appellant next objects to the trial judge's refusal to permit apportionment of fault between White and Phillips if the conduct of either or both is willful or wanton. The trial judge's decision is premised on this Court's decision in Derenberger v. Lutey (Mont. 1983), 674 P.2d 485, 40 St.Rep. 902. However, Derenberger holds only that willful or wanton conduct may not be compared to negligent conduct under Montana's comparative negligence statute, § 27-1-702, MCA.

The above statutory construction indicates to us that mere negligence and willful and wanton misconduct are different in kind, rather than degree. Consequently, we find that the legislature did not intend that they be compared under Montana's comparative negligence statute.

<u>Derenberger</u>, 674 P.2d at 487-488, 40 St.Rep. at 906. No decision was rendered in <u>Derenberger</u> with respect to whether willful or wanton conduct may be compared with like conduct.

Since we have held willful or wanton conduct to be different in kind from negligent conduct, the comparative negligence statute can not apply to willful or wanton conduct. However, the comparative negligence doctrine was adopted to ameliorate the harshness of the "all or nothing" result under the old contributory negligence approach. It makes no sense to retain this harsh result where the conduct being compared is other than negligent. <u>Derenberger</u>, supra. The better rule is to allow comparison of the parties' conduct so long as the conduct is of the same "kind". Therefore, we hold that like conduct of parties, regardless its label, may be compared for purposes of ascertaining damages. However, consistent with the comparative negligence statute, a person may recover damages for his injuries only so long as his misconduct is not greater than the conduct of the person against whom recovery is sought. Section 27-1-702, MCA.

Finally, § 27-1-701, MCA, states:

Liability for negligence as well as willful acts. Everyone is responsible not only for the results of his willful acts but also for any injury occasioned to another by his want of ordinary care or skill in the management of his property or person except so far as the latter has willfully or by want of ordinary care brought the injury upon himself.

Our holding today is not inconsistent with this statute as it has been previously interpreted "to limit a comparison of plaintiff's acts only when defendant has committed acts of a similar kind." <u>Derenberger</u>, 674 P.2d at 487, 40 St.Rep. at 905.

### III.

We need not determine whether it was error for the trial judge to require White to provide this Court with an entire

10

transcript of the proceedings below as White's appeal is successful. The cost of preparing a transcript for appeal purposes is one of the costs on appeal awarded to the successful party under Rule 33(c), M.R.App.Civ.P. and § 25-10-104(2), MCA.

## CROSS-APPELLANT'S ISSUES

Cross-appellant Phillips presents several issues for this Court's consideration. Since we are remanding for a new trial, we will address only the legal issues raised, not the application of the facts to the law in the previous trial.

## I.

White admitted smoking marijuana, using cocaine and ingesting 1 or 2 capsules of Ephredine Sulphate on the day of the accident. Simonson, Rasmussen and White filed a joint motion in limine requesting that all evidence regarding the use of drugs prior to the accident be excluded from trial. Following a hearing and filing of briefs in the matter, the motion was granted and the evidence excluded unless a foundation could be established showing:

a. At the time of the collision, the driver was under the influence of drugs, and the passengers knew or should have known that he was under the influence; and

b. The driver's negligence was the proximate or controlling cause of the injuries to plaintiffs.

Order of the District Court, dated April 26, 1984.

Cross-appellant contends that the first part of the test is nearly impossible to prove and that the second part is a determination which should be left for the jury. We disagree.

Evidence of the use of drugs is, by its very nature, prejudicial. We previously approved a similar foundational requirement as a condition to admission of prejudicial evidence in Nelson v. Hartman (1982), 199 Mont. 295, 299, 648 P.2d 1176, 1178. There, the trial judge conditionally

11

excluded the evidence until a foundation linking the defendant's driving record with his competency to drive at the time of the accident was laid. Likewise, we approve this trial judge's demand for a link between the prejudicial evidence and the accident. If White's negligence was not a cause of the accident, it should not be admitted. Again, there is no error.

Even if the test is met, the trial court must still weigh the probative value of the evidence against its prejudicial effect. Rules 401 and 403, M.R.Evid. With respect to the probative value of the evidence, cross-appellant's own expert witness, Dr. Kenneth Mueller, testified that he could not state with a reasonable degree of medical certainty that White's use of the drugs had any adverse effect on his driving ability at the time of the accident. Under Aasheim v. Humberger (Mont. 1985), 695 P.2d 824, 42 St.Rep. 235, the proper test to be used at the next trial is whether White's drug useage "more likely than not" affected his ability to drive. Aasheim, 695 P.2d at 827-828, 42 St.Rep. at 239, 240. If this test cannot be met by Phillips, there will be no abuse of discretion should the trial judge hold that the probative value of the evidence is not outweighed by its prejudicial effect.

## II.

The investigating highway patrol officer, James Curtin, testified that in his opinion Phillips was traveling too fast to safely negotiate the corner and White was traveling within the speed limit immediately prior to the accident. Cross-appellant objects, contending that Officer Curtin was not qualified to offer such an opinion because he did not conduct drag factor or coefficient of friction tests. The trial judge is granted wide discretion in determining whether to admit opinion testimony of investigating police officers

12

regarding the speeds of vehicles. Graham v. Rolandson (1967), 150 Mont. 270, 285, 435 P.2d 263, 271. Given Officer Curtin's qualifications and experience, as well as the general nature of his testimony, we find no abuse of discretion.

III.

Next, cross-appellant objects to the admission into evidence of pictures taken during a re-creation of the accident. White assisted with the re-creation, then explained to the jury the dissimilarities between the re-creation and the actual accident. If the conditions of the re-creation are "substantially similar" to those at the time of the accident and the re-creation has been properly foundationed, there is no abuse of discretion by the trial judge in admitting the evidence. Johnson v. Y.M.C.A. of Great Falls (1982), 201 Mont. 36, 41-42, 651 P.2d 1245, 1248-1249; Barmeyer v. Montana Power Company (Mont. 1983), 657 P.2d 594, 599, 40 St.Rep. 23, 28.

IV.

Finally, cross-appellant objects to the use of a sudden emergency instruction in this case. The instruction given is that used repeatedly by courts in Montana:

> You are instructed that when a person is faced with a sudden emergency which is not created by his own negligence, his conduct is to be tested by what an ordinarily prudent person would have done under the same circumstances and he is not chargeable with negligence for failing to adopt the most judicious course as disclosed by subsequent events.

Jury Instruction #16.

There is no reason for this instruction to ever be given in an automobile accident case. It adds nothing to the established law applicable in any negligence case, that due care under the circumstances must be exercised. "The circumstances" includes the pressure and split-second

13

decision-making which accompanies the crisis prior to some automobile accidents. Further, a driver is never held responsible for non-negligent actions which prove, with hindsight, to have been incorrect. The instruction adds nothing to the law of negligence and serves only to leave an impression in the minds of the jurors that a driver is somehow excused from the ordinary standard of care because an emergency existed. This is not the law. See W. P. Keeton, The Law of Torts § 33 (5th ed. 1984).

In Knapp v. Stanford (Miss. 1981), 392 So.2d 196, the Mississippi Supreme Court abolished prospectively the sudden emergency instruction in all negligence cases, stating:

> The hazard of relying on the doctrine of "sudden emergency" is the tendency to elevate its principles above what is required to be proven in a negligence action. Even the wording of a well-drawn instruction intimates that ordinary rules of negligence do not apply to the circumstances constituting the claimed "sudden emergency." Also it tends to confuse the principle of comparative negligence that is well ingrained in the jurisprudence of this State.

Knapp, 392 So.2d at 198.

Similarly, the use of the sudden emergency instruction in automobile accident cases is hereafter banned.

The verdict is vacated and this cause is remanded for a new trial, consistent with the law as set forth herein.

Justice

We concur:

Chief Justice

_John E. Sheehy_

_L. C. Gulbrandson_

_William E. Hunt Sr._
Justices

15