**Betty Ann BASS, Appellant,**

v.

**Geraldine WILLIAMS, Appellee.**

**No. 91-CA-195-MR.**

Court of Appeals of Kentucky.

Sept. 4, 1992.

Timothy K. Chism, Jr., Terry Janes, Lee L. Coleman, Hughes & Coleman, Bowling Green, for appellant.

J. David Bryant, Harlan and Parker, Bowling Green, for appellee.

Before DYCHE, McDONALD and SCHRODER, JJ.

McDONALD, Judge.

Appellant, Betty Bass, appeals from a judgment based on a jury finding which denied her tort damages from a vehicular collision.

FACTUAL BACKGROUND:

On December 28, 1988, in Barren County, Betty Bass was a passenger in a pickup truck driven by her husband, Ralph Bass. At the time of the collision, the truck was loaded with furniture intended for sale.

Just prior to the collision, the Basses were traveling west on Highway 90 toward Glasgow, at less than the speed limit because the weather conditions were cold, with some snowing, and the roadways were icy and slick. The investigating officer described the road conditions as "hazardous."

At about 11:40 a.m., near the city limits of Glasgow, Appellee Geraldine Williams, traveling east on Highway 90, lost control of her vehicle, crossed over the center line

into the path of the Bass vehicle, and collided with it.

Williams testified that she was aware that the roads had ice on them from the time she left her mother's house, a matter of minutes before the collision. As she was driving along, she hit some ice, skidded onto the gravel shoulder, lost control of her vehicle and slid into the path of the Bass vehicle, traveling in its proper lane.

Williams said she thought the Bass vehicle was going to go around her because there was room to do so, and there was no traffic behind her in the eastbound lane. Nevertheless, Bass collided with her vehicle.

Witnesses traveling behind the Bass vehicle stated that Bass was going 35 to 40 miles per hour, considered to be slow, when the Williams vehicle just cut in front of the Bass vehicle. These witnesses related there was nothing Bass could do but hit Williams. Ralph Bass testified he did not have time to avoid hitting Williams. Betty Bass told Williams at the scene that Ralph did not see her vehicle in trouble, which formed the basis for the specific duties imposed on Betty Bass by Instruction No. 5.

The collision was head on for the Bass vehicle, and Betty Bass was not wearing the available seatbelt when the collision occurred. She was thrown into the window and dash, causing head, neck and shoulder injuries.

## PROCEDURAL BACKGROUND:

Betty Bass filed suit against Geraldine Williams for Williams' negligent operation of her vehicle. In the complaint, Betty Bass alleged that she was the operator of the pickup truck instead of her husband, Ralph. Williams counterclaimed against Betty Bass for negligence and damages; however, Williams' counterclaim was subsequently dismissed on a voluntary basis after discovery showed that Ralph Bass was the operator of the pickup truck.

Ralph Bass was never sued by either Betty Bass or Geraldine Williams in any way, shape, fashion or form.

## INSTRUCTIONS TO THE JURY:

The instructions of the court to the jury form the bulk of the arguments in this appeal, and those instructions pertinent to these arguments are as follows:

*Instruction No. 4*

This instruction covered the general duty of Geraldine Williams to exercise ordinary care for her own safety and for the safety of others, which included the following specific duties of:

(1) To refrain from crossing the center line ...;

(2) To have her automobile under reasonable control ...;

(3) To drive at a speed no greater than was reasonable ...;

(4) To exercise ordinary care generally to avoid collision....

In the last paragraph of Instruction No. 4, the court gave the sudden emergency instruction, stating:

That if immediately before the accident, Geraldine Williams suddenly and unexpectedly encountered ice on the highway, which caused her to lose control of her automobile, and caused it to move into the left lane, and if the emergency thus presented was not caused or brought on by the failure of Geraldine Williams to perform any of her duties set forth above, she was required thereafter to exercise only such care as an ordinarily prudent person would exercise under the same conditions and circumstances.

After the jury was given the general duty, the specific duties and the sudden emergency qualification, it was directed to answer the following interrogatory:

We, the jury, find GERALDINE WILLIAMS at fault:

 Yes _____

 No _____

*Instruction No. 5*

This instruction pertained to duties imposed upon Betty Bass, the passenger, requiring her to exercise ordinary care for her own safety[1] as a general duty which included the following specific duties:

---

1. Because the duty to wear a seatbelt is not statutory, no specific duty may be given to the

(1) To keep a lookout ahead for other vehicles in front of the vehicle in which she was a passenger, or approaching so near its intended line of travel as to be in danger of collision;

(2) To warn her husband of any approaching danger.[2]

*Instruction No. 6*

The court instructed that Ralph Bass, the driver of the pickup truck, had the general duty of ordinary care, which included the specific duties of:

(A) Keeping a lookout;

(B) Reasonable control;

(C) Reasonable speed;

(D) To avoid collisions.

*Instruction No. 7*

This is the apportionment instruction. This instruction lumped together and apportioned the fault of the collision and the enhancement of damages to the various participants, namely, Geraldine Williams, Betty Bass and Ralph Bass. This instruction was not acted upon because of the jury answer to Instruction No. 4.

JURY VERDICT:

The jury answered "No" to the interrogatory attendant to Instruction No. 4, which relieved Geraldine Williams of any fault in the collision and, based upon the finding of "no" fault, the jury was prohibited from further deliberation in the case. The court entered judgment in accordance with the jury's finding that Geraldine Williams committed no negligence.

The appeal to us brings with it four assigned errors allegedly committed by the trial court, and we will review those errors in the order argued. Additional facts will be supplied as needed to explain specific contentions of the parties.

 The first assignment of error was that the trial court improperly instructed the jury on the rule of "sudden emergency."

Bass argues that since the adoption of comparative negligence, an instruction on sudden emergency is unnecessary and improper. Bass contends that the law developed in *Hilen v. Hays*, Ky., 673 S.W.2d 713 (1984), wherein comparative negligence was adopted, is pertinent to her position as found in the following language:

> Comparative negligence is *not* "no fault," but the direct opposite. It calls for liability for any particular injury in direct proportion to fault.

Bass asserts that the sudden emergency instruction is confusing and prejudicial, and it lessens the dictate of "direct proportion to fault." The instruction should be given the same treatment as the "last clear chance" instruction was given in *Kennedy v. Hageman*, Ky.App., 704 S.W.2d 656 (1985), that is, it should be abolished.

Williams argues that the sudden emergency instruction is not a defense, but only a qualification or condition imposed on a defendant's duties. It did not shift the burden of proof, nor did it alter the duties of any of the parties.

It is our opinion that the instruction has a quality to it that diminishes the duties of

---

jury concerning its utilization. *See Wemyss v. Coleman, infra*, at 179. We are convinced that the only duty Betty Bass had was that of ordinary care for her own safety. *Wemyss*, at 180, explains,

> ... failure to utilize an available seat belt does not qualify as breach of a statutory duty even though it may be a breach of the general duty to exercise reasonable care for one's own safety. ... [T]he duty to exercise ordinary care for one's own safety is no different from the duty to exercise ordinary care for the safety of others.

We believe it appropriate to have the jury to evaluate and allocate the effects of the breach of duty of one's own safety after the jury has made an award. Such would clearly distinguish between allocation of fault in bringing about the accident and the degree of fault of enhancing one's own injury and damages. *Wemyss*, at 177, comments, "It is true ... that [herein Betty Bass's] negligence played no part in the motor vehicle collision." Bass is only responsible for her own avoidable consequences. *See Blair v. Eblen*, Ky., 461 S.W.2d 370 (1970).

So as not to confuse the jury, we suggest patterning an instruction after the form found in John S. Palmore, *Kentucky Instructions To Juries*, § 16.34.2 (Supp.1992).

2. Imposing the specific duties on the passenger, Betty Bass, was not asserted as error on appeal by her. However, upon retrial, if the evidence is the same, there is no basis to give the specific duties.

the defendant-driver, Williams, and is in violation of the "direct proportion to fault" concept in *Hilen*. *Stratton v. Parker*, Ky., 793 S.W.2d 817 (1990), reaffirms *Hilen* stating, "[one] is liable for an amount equal to his degree of fault, no more and no less."

*Dix & Associates Pipeline Contractors v. Key*, Ky., 799 S.W.2d 24 (1990), says: Our decision in *Hilen v. Hays*, was premised upon the principle of fundamental fairness, that liability should be assessed in relation to fault and that the extent of liability should be determined by the extent of the fault.

It is our belief that the sudden emergency instruction so qualifies Williams' duties to such an extent that they are lessened. Fault is determined by breach of duties and that is the sole factor upon which liability is fixed. *See Cox v. Cooper, infra.* Facts giving rise to a perceived sudden emergency are the same facts already before the jury. They formulate the basis for the general and specific duties, subjecting them to explanation and proper argument by counsel. Herein, the jury was instructed that Williams had the general duty to exercise ordinary care as a reasonably prudent person would under like or similar circumstances, including the conditions of the road. Then the jury was again given a situation to consider about the same road conditions as those conditions related to a sudden emergency. It is conclusively clear that such an instruction is not necessary because everything under the sudden emergency was already said in the instructions on general and specific duties of the driver.

We have been told over and again that the jury be instructed only on the "bare bones" of the duties imposed by law. *See Cox v. Cooper*, Ky., 510 S.W.2d 530 (1974); *Rogers v. Kasdan*, Ky., 612 S.W.2d 133 (1981); *Ford Motor Company v. Fulkerson*, Ky., 812 S.W.2d 119 (1991); *Drury v. Spalding*, Ky., 812 S.W.2d 713 (1991). We conclude that, with the adoption of comparative negligence, it is error to instruct the jury on a sudden emergency theory.

■ The second assignment of error is that the trial court improperly instructed the jury as to the duties of the nonparty, Ralph L. Bass.

Ralph Bass, the driver of the plaintiff-passenger's vehicle, was never sued in this action. The identity of the owner of the Bass vehicle is not revealed in the record, although the original complaint alleged that Betty was the owner and driver. Pretrial discovery showed that Ralph was the driver. Although Ralph Bass was never sued, the trial court nonetheless imposed the general duty of ordinary care with four specific duties in the operation of his vehicle, and an instruction to apportion the percentile of his fault in causing or contributing to the injuries of Betty Bass. This situation presents just one more stump to plow around in the field of comparative fault.

Bass argues that apportionment of fault and damages is limited to parties or former parties to the action, or persons released from liability. Reliance is upon KRS 411.-182 for the proposition just stated.

KRS 411.182 provides:

(1) In all tort actions, including products liability actions, involving fault of more than one party to the action, including third-party defendants and persons who have been released under subsection (4) of this section, the court, unless otherwise agreed by all parties, shall instruct the jury to answer interrogatories or, if there is no jury, shall make findings indicating:

(a) The amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and

(b) The percentage of the total fault of all the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under subsection (4) of this section.

(2) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.

(3) The court shall determine the award of damages to each claimant in accordance with the findings, subject to any reduction under subsection (4) of this section, and shall determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault.

(4) A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable, shall discharge that person from all liability for contribution, but it shall not be considered to discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons shall be reduced by the amount of the released persons' equitable share of the obligation, determined in accordance with the provisions of this section. (Enact. Acts 1988, ch. 224, § 1, effective July 15, 1988.)

Betty Bass reasons that since no one made a claim against Ralph Bass, sued him or settled with him by a release or agreement not to sue, it was error to include him in the apportionment of liability section of the instructions, and it was error to impose duties on him bearing on his exercise of ordinary care in driving his vehicle by way of Instruction No. 6.

On the contrary, Williams argues that Ralph Bass's status is determined by Section (4) of KRS 411.182. Williams reasons that the instruction was justified because Betty Bass did not sue her husband, and such was tantamount to a covenant not to sue, "or similar agreement entered in by a claimant and person liable." Therefore, Ralph Bass's negligence could only be assessed by the jury through the instructions as presented by the court.

We conclude the trial court erred when it instructed the jury to consider the duties of Ralph Bass in arriving at an apportionment of fault and damages upon one who does not fall specifically within the scope of KRS 411.182. KRS 411.182 applies to persons named as parties, regardless of how named, and those persons who bought their peace from the litigation by way of releases or agreements. These persons affected by the statute are explicitly denominated, and Ralph Bass does not fit into any of the described classifications. Williams urges us to adopt a theory of implied agreement between Betty and Ralph by Betty's failure to sue Ralph. While we will liberally construe the statute, we believe Williams' construction is beyond the bounds of liberality. If we be convinced that Williams' argument is tenable, conceivably the courtroom could have many empty chairs belonging to tortfeasors unnamed, and possibly unknown until trial. Simply said, KRS 411.182 does not apply to the facts of this case.

Although the jury did not progress far enough to actually apportion fault because of its answer to Instruction No. 4, we do not accept Williams' position that the error, if any, was harmless and a moot issue. The error, we reason, is in the instructing about the duties of the non-party, Ralph Bass, because the instructions were read to the jury in their entirety and the jury had the instructions available to read during deliberations. *Drury v. Spalding, supra,* covers this point at page 717: "Under normal circumstances there is no reason to assume that a jury does not consider all instructions in seeking to render a true verdict...."

■ The third assigned error is that the trial court improperly prohibited Betty Bass from introducing evidence on the local custom of seatbelt usage for the purpose of determining the standard of due and ordinary care.

■ Bass proffered evidence of a 1988 survey showing that approximately 12% of the motorists wore seatbelts, and about 15% of the motorists utilized them in 1989. The surveys were conducted by a state agency, with Barren County included in the survey. Bass's theory of offering the evidence was that because no statute requires the wearing of a seatbelt, such duty comes from the common law as given in *Wemyss v. Coleman,* Ky., 729 S.W.2d 174 (1987). So the jury must judge Betty Bass's conduct based on ordinary care, not negligence per se which is applied for the breach of a

statutory duty. In determining ordinary care, absent statutory direction, community standards are admissible to show what ordinarily is done in like circumstances, and the surveys demonstrate the usual and customary conduct of "non-use" of seatbelts. Bass cites *Louisville Trust Company v. Nutting*, Ky., 437 S.W.2d 484 (1968), and *Illinois Central Railroad Company v. Maxwell*, 292 Ky. 660, 167 S.W.2d 841 (1933).

Williams' counter argument is that *Wemyss* imposes as part of the general duty of ordinary care instruction that one is required to exercise care for one's own safety, "leaving it to the jury to decide from the evidence whether the failure to utilize an available seat belt was a breach of that duty in the circumstances of this case...." Page 181.

Our opinion coincides with the trial court's ruling in its exclusion of the evidence offered. Standards of care which guide everyday affairs come to us from statutes and ordinances, as the primary source, judicial opinions, administrative regulations, industry codes, along with custom and usage.

■ While custom and usage may, under some circumstances, establish a standard of care, it may not negate an established standard. Clear language supports our contention as found in *Clark's Adm'r v. Kentucky Utilities Co.*, 289 Ky. 225, 158 S.W.2d 134, 136 and 137 (1942). We quote:

> The law fixes duties for the breach of which damages may be allowed and the person upon whom a duty is imposed may not relieve himself of liability by proof that he and others similarly situated have never performed the duty imposed upon them.

Only the weakest of arguments would proposition that the opinion in *Wemyss* by our Supreme Court is not "the law" which fixes the personal duty of utilizing an available seatbelt as in this case.

■ Lastly, Bass claims error in that the trial court permitted lay testimony on the effectiveness of seatbelts.

Williams offered testimony by David Stucker regarding the effectiveness of seatbelts. Mr. Stucker is a graduate of the University of Louisville with a degree in business administration. He has no post-graduate degree work. Mr. Stucker is Director of Public Relations and Safety for the local chapter of the American Automobile Association. Relative to driving safety, he has attended seminars, training programs and leadership instruction. Mr. Stucker champions causes of better roads, better safety and better travel, and he speaks to many civic organizations, teaches defensive driving, lobbies for legislative bills and writes editorials on the use of seatbelts. Mr. Stucker admits he has no accident-reconstruction expertise and made no investigation of the particulars of the accident at hand.

Mr. Stucker testified mostly about statistics concerning accidents and the effects of non-use of seatbelts. Much of his testimony was excluded because of his lack of knowledge about specifics or due to his lack of expertise. The testimony admitted in evidence was based upon information obtained by him from publications.

We do not agree with the trial court that Mr. Stucker was qualified as an expert for the issues germane to this litigation. The expertise needed is prescribed by the Supreme Court in *Wemyss* at 179. We quote:

> The appellee, Coleman, claims that even if the seat belt defense can be a jury issue in a proper case, that in the present case the appellants failed to offer relevant and competent evidence sufficient to raise a jury issue. The defendants' evidence consisted of the testimony of an examining physician employed by the defendants who testified to the conclusion that had Mrs. Coleman "worn a seat belt she probably ... would not have been pitched as far forward and would not have had as far to come back," and "she probably would not have had the injuries necessitating medical care had she had the seat belt fastened."

> Proof of the doctor's competency to give such a testimony rested upon some brief leading questions about his famil-

iarity "with the current and modern medical literature," and was, at best, debatable. However, the decision as to whether a witness is qualified to give expert testimony rests initially in the sound discretion of the trial court. *Kentucky Power Co. v. Kilbourn,* Ky., 307 S.W.2d 9 (1957); *Alexander v. Swearer,* Ky., 642 S.W.2d 896 (1983). In this case the decision not to admit evidence regarding the seat belt defense was made in response to a motion in limine to suppress such evidence regardless of competency. This was error, and it will remain for the trial court to decide the threshold question of whether the witness was qualified by sufficient training, special knowledge, or skill to testify on this subject.

Herein, Mr. Stucker could give no competent medical testimony about the injury, nor could he give any scientific evidence about the causal effect of the lack of use of the seatbelt and the injury. His testimony was not relevant and competent and, as such, its admission was an abuse of discretion by the trial court. *Wemyss* requires the trial court to exercise sound discretion in adopting and qualifying a witness as an expert. To qualify, the witness must possess sufficient training, special knowledge, or skill to testify on the subject dealing with the effect of non-usage of seatbelts in collisions. Sound discretion is not a judicial cliche. It is the necessary ingredient of a judicial decision which is fact-based, reasoned, and which can be universally accepted as thoughtful. It is not whimsical in nature. What must be shown is a causal relation between the claimant's failure to wear a seatbelt and the degree of subsequent injury. *Wemyss* at 178.

In conclusion, for the reasons stated in this opinion, the circuit court's judgment is reversed, and Betty Bass's cause of action is remanded to the circuit court for purposes of a new trial consistent with the directions given in this opinion.

All concur.