Charlotte REGENSTREIF, and Cara
Regenstreif Appellants,

v.

Linda O. PHELPS Appellee.

No. 2001–SC–0987–DG.

Supreme Court of Kentucky.

Aug. 26, 2004.

As Modified Sept. 17, 2004.

David A. Weinberg, Weinberg & Capello, Lexington, Counsel for Appellants.

Perry M. Bentley, Todd S. Page, Stoll, Keenon & Park, Lexington, Counsel for Appellee.

KELLER, Justice.

## I. ISSUE

A vehicle driven by Appellee, Linda Phelps ("Phelps"), crossed the center line and struck head-on a vehicle driven by Appellant, Charlotte Regenstreif ("Regenstreif"). Because of evidence that "black ice" caused the accident, the trial court's instructions qualified Phelps's duties with a sudden emergency instruction. The jury found that Phelps did not violate her duties and returned a verdict in her favor. Was it error to qualify Phelps's duties with a sudden emergency instruction? Because we hold that the adoption of comparative negligence did not abolish the sudden emergency doctrine, we overrule *Bass v. Williams*[1] to the extent that it does so, and accordingly, we hold that the trial court did not err in qualifying Phelps's duties with a sudden emergency instruction.

## II. BACKGROUND

On the morning of February 7, 1996, Phelps was making a routine journey from Versailles to Lexington, to the home of Dr. & Mrs. Piercy, in the Castlegate subdivision, where she provided childcare services for the Piercy's children. As Phelps was turning into the subdivision, Regenstreif was preparing to drive her daughter, Cara, to school. Regenstreif had already backed out of her driveway and was beginning to proceed up a small, curved hill by her

---

1. Ky.App., 839 S.W.2d 559 (1992).

house, when Phelps lost control of her car, crossed into the oncoming lane and struck Regenstreif's vehicle head on.

Regenstreif and her daughter (collectively "Regenstreifs") filed a negligence action against Phelps in the Fayette Circuit Court seeking damages from Phelps for their personal injuries and for damage to Regenstreif's automobile. At trial, Phelps testified that the road was clear from Versailles to Lexington, but that she lost control of her vehicle in the subdivision because of a patch of ice on the road in the curve. She testified that the ice was not visible from her vehicle and only observed the ice after leaving her vehicle after the accident. Mrs. Piercy testified that the roads in the subdivision were slick that morning. The officer who was called to the scene testified that ice was present on the roads in the subdivision and that her cruiser skidded on the ice past the scene of the collision when she arrived at the accident site. Based on the foregoing, the trial court instructions qualified Phelps's duties with a sudden emergency instruction,[2] over the objection of the Regenstreifs' attorney, who, relying on *Bass,* asserted that "with the adoption of comparative negligence, it is error to instruct the jury on a sudden emergency theory."[3]

Although one of the specific duties that the jury instructions imposed on Phelps was a duty "[t]o drive and keep her automobile on the right hand side of the roadway[,]" and although it was undisputed that Phelps' vehicle crossed the center line and struck Regenstreif's vehicle, the jury found that Phelps was not at fault and returned a verdict in her favor. In accordance with the verdict, the trial court entered a judgment dismissing the Regenstreifs' complaint.

The Regenstreifs appeal the judgment, and the Court of Appeals, after noting that "[i]t is difficult to view the trial court's disregard of *Bass* as anything but error," held that the error was harmless. We granted discretionary review, and although we affirm the Court of Appeals, we overrule *Bass* to the extent that it abolished the sudden emergency doctrine. Accordingly, we hold that the trial court did not commit error by qualifying Phelps's duties with a sudden emergency instruction.

## III. ANALYSIS

The Regenstreifs, understandably, rely exclusively on *Bass* in seeking a reversal of the Court of Appeals's decision. In *Bass,* the Court of Appeals found that the sudden emergency instruction "is in violation of the 'direct proportion to fault' concept"[4] adopted by this Court in *Hilen v. Hays*[5] and concluded "that, with the adoption of comparative negligence, it is error to instruct the jury on a sudden emergency theory."[6] The *Bass* Court's holding has been the law in this jurisdiction since 1992,[7] and we agree with the Regenstreifs, that, if *Bass* remains the law, they are entitled to a reversal of the Court of Appeals's decision and a new trial. However, after reviewing the principles of comparative negligence and the purposes served by a sudden emergency qualification, we find no conflict between compara-

---

2. Although mentioned at oral argument, we do not address whether only certain of Phelps's specific duties, as opposed to all of her duties, set forth in the instruction should be qualified by a sudden emergency instruction.

3. *Bass,* 839 S.W.2d at 563.

4. *Id.*

5. Ky., 673 S.W.2d 713 (1984).

6. *Bass,* 839 S.W.2d at 563.

7. SCR 1.040(5).

tive negligence and the sudden emergency qualification, and accordingly, we hold that it is not error to instruct on a sudden emergency when warranted by the evidence. *Bass* is overruled to the extent it abolished the sudden emergency doctrine in Kentucky.

## A. Purpose of Comparative Negligence

▇▇▇ Comparative negligence "calls for liability for any particular injury in direct proportion to fault."[8] As opposed to contributory negligence, where the plaintiff's negligence can be a complete defense, comparative negligence "shift[s] the focus of attention from liability to damages, and ... divide[s] the damages between the parties who are at fault."[9] A finding of fault involves an examination of the duties of each party and a determination of whether those duties were breached.[10]

In 1984, this Court concluded that contributory negligence should be supplanted by comparative negligence and explained its reason for doing so:

> Comparative negligence is *not* "no-fault," but the direct opposite. It calls for liability for any particular injury in direct proportion to fault. It eliminates a windfall for either claimant or defendant as presently exists in our all-or-nothing situation where sometimes claims are barred by contributory negli-

gence and sometimes claims are paid in full regardless of contributory negligence such as in cases involving last clear chance or defendant's willful or wanton negligence.[11]

In 1988, the Kentucky legislature codified comparative fault.[12]

## B. Purpose of Sudden Emergency Qualification

▇▇▇ The common-law doctrine of "sudden emergency" attempts to explain to a jury how to judge the allegedly negligent conduct of a person, plaintiff or defendant, who is suddenly confronted with an emergency situation that allows no time for deliberation.[13] The sudden emergency doctrine does not excuse fault; it defines the conduct to be expected of a prudent person in an emergency situation.[14] In *Harris v. Thompson*,[15] our predecessor court noted the purpose for including the sudden emergency qualification in instructions:

> [W]hen a defendant is confronted with a condition he has had no reason to anticipate and has not brought on by his own fault, *but which alters the duties he would otherwise have been bound to observe, then the effect of that circumstance upon these duties must be covered by the instructions.*[16]

In Kentucky, sudden emergency qualifications have been approved in automobile

8. *Hilen v. Hays*, Ky., 673 S.W.2d 713, 718 (1984). *Accord* KRS 411.182.

9. WILLIAM L. PROSSER & W. PAGE KEETON, PROSSER & KEETON ON TORTS 470 (5TH ed., Hornbook Series, 1984).

10. *Harris v. Thompson*, Ky., 497 S.W.2d 422 (1973); *Bass v. Williams*, Ky.App., 839 S.W.2d 559, 563 (1992).

11. *Hilen v. Hays*, Ky., 673 S.W.2d at 718 (citations omitted).

12. 1988 Ky. Acts ch. 224; KRS 411.182.

13. Jeffrey F. Ghent, J.D., Annotation, *Modern Status of Sudden Emergency Doctrine*, 10 A.L.R.5th 680 (1993).

14. *Compton v. Pletch*, 580 N.E.2d 664 (Ind. 1991); *Brooks v. Friedman*, 769 N.E.2d 696 (Ind.Ct.App.2002).

15. Ky., 497 S.W.2d 422 (1973).

16. *Id.* at 428 (emphasis added).

collision cases in which the defendant driver has encountered a patch of ice on the roadway or children or animals darting into the roadway.[17] Kentucky also recognizes that other situations such as other vehicles, swooping airplanes or falling boulders, could conceivably create an emergency for a driver that would justify a sudden emergency qualification.[18] In explaining why the qualification need be given in cases where a driver encounters an ice patch, our predecessor court stated:

> While the driver must take into consideration the slippery condition of the highway, . . . if the evidence shows that the accident resulted from a condition of the road and not from any negligence of the driver, no liability results, since it is common knowledge that an automobile may skid on a slippery highway without any negligence on the part of the operator.[19]

### C. Was Sudden Emergency Doctrine Subsumed by Comparative Negligence?

 The sudden emergency qualification was not subsumed by the comparative negligence doctrine.[20] In comparative negligence, the plaintiff's damages are reduced in proportion to his or her fault.[21] A party's fault is determined by evaluating his or her conduct in consideration of the duties he or she is bound to observe.[22] "[T]he sudden emergency doctrine is merely an expression of the reasonably prudent person standard of care. It expresses the notion that the law requires no more from an actor than is reasonable to expect in the event of an emergency." [23] In other words, in the comparative negligence case, "[t]he sudden emergency instruction informs the jury . . . how it is to allocate fault and apportion damages when the conduct of the person in question is that of an 'ordinarily prudent person' when faced with an emergency situation." [24] "Significantly, the doctrine explains to the jury the standard of conduct expected of defendants *and* plaintiffs who act under the stress of an emergency situation." [25]

With the adoption of comparative negligence, the sudden emergency doctrine is now only a factor in the total fault analysis.[26] In cases like this one, where the defendant encountered a patch of ice, the

**17.** *Harris v. Thompson*, Ky., 497 S.W.2d 422 (1973) (where defendant driver encountered ice); *Brown v. Todd*, Ky., 425 S.W.2d 737 (1968) (where the defendant driver encountered a "good-sized dog"); *Atlantic Greyhound Corp. v. Franklin*, 301 Ky. 867, 192 S.W.2d 753 (1946) (where the defendant driver encountered ice).

**18.** *Brown v. Todd*, 425 S.W.2d at 739.

**19.** *Atlantic Greyhound Corp. v. Franklin*, 192 S.W.2d at 755 (citation omitted).

**20.** *Mosell v. Estate of Marks*, 526 N.W.2d 179 (Iowa Ct.App.1994).

**21.** WILLIAM L. PROSSER & W. PAGE KEETON, PROSSER & KEETON ON TORTS 472 (5TH ed., Hornbook Series, 1984).

**22.** *Harris v. Thompson*, Ky., 497 S.W.2d 422 (1973); *Bass v. Williams*, Ky.App., 839 S.W.2d 559, 563 (1992).

**23.** *Weiss v. Bal*, 501 N.W.2d 478, 481 (Iowa 1993).

**24.** *Compton v. Pletch*, 561 N.E.2d 803, 807 (Ind.Ct.App.1990).

**25.** *Young v. Clark*, 814 P.2d 364, 368 (Colo. 1991).

**26.** *Ross v. Vanderbilt University Medical Center*, 27 S.W.3d 523 (Tenn.Ct.App.2000). *Accord* RESTATEMENT (SECOND) OF TORTS § 296(1) ("In determining whether conduct is negligent toward another, the fact that the actor is confronted with a sudden emergency which *requires rapid decision* is a factor in determining the reasonable character of his choice of action.").

defendant's failure to adhere to the duties enumerated by statute (e.g., to keep her automobile on the right hand side of the road), without a sudden emergency qualification, will result in liability even if the defendant was not at fault.

The core principle of comparative negligence is that "[o]ne is liable for an amount equal to his degree of fault, no more and no less." [27] The sudden emergency doctrine necessarily complements this principle in those particular cases where additional circumstances alter the way in which one's degree of fault should be determined. We find no friction between comparative negligence and the sudden emergency doctrine, and therefore, we conclude that the *Bass* Court erred in abolishing the doctrine on this ground.

## IV. CONCLUSION

We affirm the Court of Appeals and overrule *Bass v. Williams* to the extent that it rejects the sudden emergency doctrine.

COOPER, JOHNSTONE and WINTERSHEIMER, JJ., concur.

LAMBERT, C.J., dissents by separate opinion in which GRAVES and STUMBO, JJ., join.

LAMBERT, Chief Justice, dissenting.

Respectfully, I dissent from the majority opinion and would both reaffirm *Bass v. Williams* [1] and affirm the decision of the Court of Appeals.

With the adoption of comparative negligence this state abandoned a legal relic, the sudden emergency doctrine. Sudden emergency instructions serve only to confuse the jury and are incompatible with comparative negligence. As the Court of Appeals well reasoned, "The instruction has a quality to it that diminishes the duties of the defendant-driver ... and is in violation of the 'direct proportion to fault' concept ..." [2] When a sudden emergency instruction is given, a lower standard of care is granted to the defendant, and his failure to exercise care appropriate to the circumstances is excused. Under comparative negligence, "[f]ault is determined by breach of duties and that is the sole factor upon which liability is fixed." [3] Every driver has a general duty to exercise ordinary care. [4] "[T]he instruction on sudden emergency is unnecessary and potentially confusing and serves to overemphasize one portion of the case." [5]

In my view, the majority opinion is a retreat from a modern and enlightened statement of law. While other states are moving away from the sudden emergency doctrine, we have done an about face without any indication of a demonstrable need for such action. Stare decisis is a legal principle that directs us to uphold our previous decisions, unless there is a sound legal and logical reason to do otherwise. [6] *Bass* represents a sound judicial decision that has served this Court and this state well for twelve years.

The reasons supporting abandonment of the sudden emergency doctrine were well

**27.** *Stratton v. Parker,* Ky., 793 S.W.2d 817, 820 (1990).

**1.** *Bass v. Williams,* Ky.App., 839 S.W.2d 559 (1992).

**2.** *Id.* at 562–63.

**3.** *Id.* at 563.

**4.** *Wemyss v. Coleman,* Ky., 729 S.W.2d 174, 180 (1987).

**5.** *Dunleavy v. Miller,* 116 N.M. 353, 862 P.2d 1212, 1218 (1993).

**6.** *Hilen v. Hays,* Ky., 673 S.W.2d 713 (1984).

stated by the Supreme Court of Mississippi as follows:

> The hazard of relying on the doctrine of "sudden emergency" is the tendency to evaluate its principles above what is required to be proven in a negligence action. Even the wording of a well-drawn instruction intimates that ordinary rules of negligence do not apply to the circumstances constituting the claimed "sudden emergency." Also it tends to confuse the principle of comparative negligence that is well ingrained in the jurisprudence of this State. The fallacy is pointed out in the instruction itself when after seemingly commenting on the evidence, the court instructs that the defendant should have "used the same degree of care that a reasonably prudent automobile driver would have used under the same or similar unusual circumstances." In this Court's opinion, the same rules of negligence should apply to all circumstances in a negligence action and these rules of procedure adequately provide for instructions on negligence.[7]

\* \* \* \* \* \*

We conclude, therefore, that the orderly disposal of negligence cases would be best served by applying uniform principles of negligence under all circumstances.[8]

This view has been followed by a number of other jurisdictions.[9] Until now, Kentucky has been in harmony with this modern view.

A simple jury instruction apportioning fault eliminates any need for the sudden emergency instruction. In negligence cases, instructions are designed to apportion between or among the parties. Such apportionment obviously permits a determination that a party had no fault whatsoever. The sudden emergency doctrine is simply unnecessary and will disserve the fact-finding process.

For the reasons stated herein, I dissent.

GRAVES and STUMBO, JJ., join this dissenting opinion.

---

**7.** *Knapp v. Stanford,* 392 So.2d 196, 198 (Miss.1980).

**8.** *Id.* at 199.

**9.** *See Wiles v. Webb,* 329 Ark. 108, 946 S.W.2d 685 (1997); *Dunleavy v. Miller,* 116 N.M. 353, 862 P.2d 1212; *McClymont v. Morgan,* 238 Neb. 390, 470 N.W.2d 768 (1991); *Simonson v. White,* 220 Mont. 14, 713 P.2d 983 (1986).