2013 CO 4

**Richard BEDOR, Petitioner**

v.

**Michael E. JOHNSON, Respondent.**

**No. 10SC65.**

Supreme Court of Colorado,
En Banc.

Jan. 22, 2013.

Walter H. Sargent, Walter H. Sargent, a professional corporation, Colorado Springs, Colorado, Earl G. Rhodes, Younge & Hockensmith, P.C., Grand Junction, Colorado, for Petitioner.

Franklin D. Patterson, Brian D. Kennedy, Frank Patterson & Associates, P.C., Greenwood Village, Colorado, James R. Alvillar, James R. Alvillar and Associates, Grand Junction, Colorado, for Respondent.

Thomas D. Neville, Ogborn, Summerlin & Ogborn, LLC, Denver, Colorado, for Amicus Curiae Colorado Trial Lawyers Association.

Jeffrey C. Ruebel, Ruebel & Quillen, LLC, Westminster, Colorado, for Amicus Curiae Colorado Defense Lawyers Association.

Justice RICE delivered the Opinion of the Court.

¶ 1 In this negligence action, we review whether the court of appeals erred when it held that the trial court correctly instructed the jury on the sudden emergency doctrine after the Respondent, Michael E. Johnson, lost control of his vehicle in winter driving conditions and collided with Petitioner, Richard Bedor. We hold that the trial court abused its discretion when it tendered the sudden emergency instruction. Therefore, we reverse the judgment of the court of appeals.

¶ 2 In addition, we hold that trial courts should no longer give the sudden emergency instruction in negligence cases because the instruction's potential to mislead the jury greatly outweighs its minimal utility.

## I. Facts and Procedural History

¶ 3 Bedor was driving eastbound outside of Telluride, Colorado on January 16, 2004, at about 7:00 a.m., when he the saw headlights of a westbound vehicle cross the center line. Bedor slowed down, but the westbound car, driven by Johnson, spun out of control and slid sideways into the front of Bedor's vehi-cle. Both Bedor and Johnson were injured in the accident. An investigation of the scene revealed that Johnson lost control of his vehicle when he hit an icy patch of snow on the road.

¶ 4 Bedor filed a negligence action against Johnson. The case proceeded to a jury trial. The investigating police officer testified that an ice patch regularly forms during the winter in the portion of the westbound lane in which Johnson was driving. Johnson acknowledged that he had previously experienced the ice patch in that area and "was aware of the possibility" that the ice might be present the morning of the accident. There was conflicting evidence at trial regarding whether Johnson was intoxicated, speeding, or both when he lost control and spun into Bedor's vehicle.

¶ 5 Johnson requested that the trial court instruct the jury on the sudden emergency doctrine. He argued that he did not cause the ice patch that led to the accident and that he acted reasonably in light of the sudden emergency the ice presented. Bedor's counsel objected, but the trial court overruled the objection and instructed the jury on the sudden emergency doctrine. The jury returned a verdict in Johnson's favor. It found that although Bedor indeed suffered injuries, damages, or losses on account of the accident, Johnson was not negligent and therefore did not cause Bedor's injuries, damages, or losses. The trial court awarded $34,616.73 in costs to Johnson.

¶ 6 Bedor appealed the jury verdict to the court of appeals. He argued that the trial court abused its discretion when it instructed the jury on the sudden emergency doctrine and thereby prejudiced Bedor's case. The court of appeals affirmed the jury verdict in an unpublished opinion. *Bedor v. Johnson,* No. 08CA2421, slip op. at 22, 2009 WL 3863408 (Colo.App. Nov. 19, 2009) (not selected for official publication). It reasoned that the trial court properly issued the sudden emergency instruction because competent evidence at trial showed that Johnson was confronted with a sudden or unexpected occurrence—the ice patch—that was not of his own making. *Id.* at 4–8.

¶ 7 Bedor petitioned this Court for certiorari review of "whether the court of appeals erred in holding that a driver who loses control of a vehicle in winter driving conditions, crosses over into the lane of oncoming traffic, and collides with plaintiff's vehicle is entitled to a 'sudden emergency' instruction." After oral argument, this Court ordered supplemental briefing on the question of "whether a separate jury instruction concerning sudden emergencies should continue to be given in any negligence case?" We now reverse the judgment of the court of appeals and abolish the sudden emergency doctrine.

## II. Standard of Review

¶ 8 Trial courts have a duty to correctly instruct juries on matters of law. *Day v. Johnson*, 255 P.3d 1064, 1067 (Colo.2011); *Krueger v. Ary*, 205 P.3d 1150, 1157 (Colo. 2009). To determine whether the trial court has performed this duty, we first review de novo the jury instruction at issue to assess whether the instruction correctly states the law. *Day*, 255 P.3d at 1067. If it does, then we review the trial court's decision to give the jury instruction for an abuse of discretion. *Id.*

## III. The Trial Court Abused Its Discretion

¶ 9 Although the pattern sudden emergency jury instruction given by the trial court correctly stated the law as it existed at the time of trial, see CJI–Civ. 4th 9:11,[1] the trial court abused its discretion by instructing the jury on the sudden emergency doctrine because competent evidence did not support giving the instruction in this instance. See *Young v. Clark*, 814 P.2d 364, 366 (Colo.1991).

¶ 10 The sudden emergency doctrine recognizes "that a person confronted with sudden or unexpected circumstances calling for immediate attention is not expected to exercise the judgment of one acting under normal conditions." *Young*, 814 P.2d at 365 (citing W.P. Keeton et al., Prosser and Keeton on

the Law of Torts § 33 (5th ed. 1984)). A trial court has a duty to instruct the jury on sudden emergency if a party requests the instruction and competent evidence supports that request. *Kendrick v. Pippin*, 252 P.3d 1052, 1059 (Colo.2011); *Davis v. Cline*, 177 Colo. 204, 208–09, 493 P.2d 362, 364 (1972). "Competent evidence" in this context is relevant evidence that a reasonable mind might accept as adequate to support the conclusion that there was a sudden emergency and that the party requesting the instruction did not cause the emergency. *See Young*, 814 P.2d at 366; *see also City of Colo. Springs v. Givan*, 897 P.2d 753, 756 (Colo.1995) (defining "competent evidence").

¶ 11 This Court determined that competent evidence supported giving the sudden emergency instruction in *Young* and *Davis*. In *Young*, the evidence demonstrated that the defendant deliberately applied her brakes and jerked her car to the left in an attempt to avoid the plaintiff's car after an unidentified driver abruptly swerved into the center lane of traffic, forcing the defendant to brake suddenly. 814 P.2d at 364. Similarly in *Davis*, this Court held that competent evidence supported the plaintiff's request for a sudden emergency instruction when the plaintiff veered sharply to avoid a bus that had suddenly moved into her lane. 177 Colo. at 206–07, 493 P.2d at 363. The Court reasoned that the plaintiff's evasive maneuver showed that the plaintiff "chose a course of conduct ... which she might not have chosen otherwise except for the compelling circumstances of the emergency situation," and thus merited an instruction on sudden emergency. *Davis*, 177 Colo. at 208, 493 P.2d at 364. *Young* and *Davis* indicate that a trial court may properly give the sudden emergency instruction when competent evidence shows that the party requesting the instruction took deliberate action in response to a sudden emergency situation.

¶ 12 In contrast to *Young* and *Davis*, where competent evidence supported the trial court's sudden emergency instruction, we

---

1. CJI–Civ. 4th 9:11 states: "A person who, through no fault of his or her own, is placed in a sudden emergency, is not chargeable with negligence if the person exercises that degree of care that a reasonably careful person would have exercised under the same or similar circumstances."

recently determined in *Kendrick* that competent evidence did not support the trial court's decision to tender the instruction when the defendant put her car in four wheel drive in anticipation of wintery driving conditions. 252 P.3d at 1059. Although the defendant took deliberate action to avoid a collision by applying her brakes and making an illegal right turn after hitting a slippery patch of road, we held that the trial court abused its discretion by giving the sudden emergency instruction because competent evidence did not show that the defendant was confronted with a "sudden or unexpected occurrence" when trial testimony showed that the defendant "anticipated that the roads and intersections would likely be icy that morning." *Id.* at 1058–60. With these cases in mind, we turn to the evidence underlying the sudden emergency instruction given by the trial court in this case.

¶ 13 The evidence here showed that Johnson lost control of his vehicle upon encountering the snow patch. A loss of control does not constitute a deliberate response to a sudden emergency; rather, it indicates a complete lack of such a deliberate response. Thus, *Young* and *Davis* indicate that the trial court should not have given the instruction in this instance. In addition, the evidence showed that Johnson was specifically aware of the possibility that snow and ice might be on the road in the vicinity of the snow patch because he drove that stretch of road on a regular basis. His awareness was therefore similar to the *Kendrick* defendant's cognizance of wintery driving conditions and thus did not merit a sudden emergency instruction.

¶ 14 Furthermore, additional, albeit inconclusive, evidence showed that Johnson may have been speeding and/or intoxicated when he lost control of his vehicle. This evidence tends to show that Johnson might have contributed to, if not caused, the alleged "sudden emergency" that led to the accident. That Johnson's pre-accident conduct may have caused or contributed to the emergency situation demonstrates that the trial court should not have instructed the jury on sudden emergency principles. In sum, the evidence presented does not competently or reasonably support the trial court's decision to tender the sudden emergency instruction in this case. The trial court therefore abused its discretion.

■ ¶ 15 Because the instruction could have affected the outcome of the trial, the trial court's error was not harmless. *See Lifson v. City of Syracuse*, 17 N.Y.3d 492, 934 N.Y.S.2d 38, 958 N.E.2d 72, 75 (2011) (concluding that error in giving sudden emergency instruction was not harmless where application of the instruction to the facts presented could have affected the outcome of the trial); *see also Kendrick*, 252 P.3d at 1067 (reversing and remanding for a new trial where trial court erred in giving sudden emergency instruction). Specifically, under the instruction given as applied to the facts of this case, the jury could have believed that Johnson was driving negligently before he contacted the icy patch, yet found that the icy patch formation itself was a "sudden emergency," the existence of which was "no fault" of Johnson's. As such, the jury may have concluded that Johnson was "not chargeable with negligence" once he hit the icy patch due to the sudden emergency instruction. We accordingly reverse the judgment of the court of appeals and remand for a new trial.

¶ 16 Having decided the outcome of this case, we now address the question upon which we ordered supplemental briefing from the parties: whether a separate jury instruction concerning sudden emergencies should continue to be given in any negligence case.

### IV. Sudden Emergency Doctrine

■ ¶ 17 We hold that Colorado negligence law no longer requires the sudden emergency instruction and that the instruction's potential to mislead the jury outweighs its minimal utility. We therefore abolish the sudden emergency doctrine.

¶ 18 In the following analysis, we first discuss our decision to retain the sudden emergency doctrine in *Young*, 814 P.2d at 369. Next, we summarize why our recent sudden emergency opinion, *Kendrick*, supports our decision to depart from *Young* in this case. Finally, we discuss the sudden

emergency instruction's minimal utility weighed against its potential to mislead the jury.

## A. *Young* and *Kendrick*

¶ 19 This Court explicitly retained the sudden emergency doctrine in *Young*, 814 P.2d at 369. Like this case, *Young* arose out of a negligence action resulting from a car accident. *See id.* at 364. There, we assessed the plaintiff's invitation to abolish the sudden emergency doctrine, but elected to keep the instruction for several reasons. First, we determined that the sudden emergency instruction "merely serves as an explanatory instruction, offered for purposes of clarification for the jury's benefit," *id.* at 368, and does not "intimate[ ] that ordinary rules of negligence do not apply to the circumstances constituting the claimed 'sudden emergency.' " *Id.* at 367–68 (quoting *Knapp v. Stanford*, 392 So.2d 196, 198 (Miss.1980)). Additionally, we concluded that the instruction did not conflict with Colorado's modern comparative negligence scheme even though courts developed the sudden emergency doctrine to "overcome the harsh effect[s] of the former contributory negligence defense whereby a plaintiff's negligence acted as a complete bar to recovery." *Id.* at 368. Finally, we stated that "[t]he sudden emergency doctrine is a long-established principle of law in this jurisdiction," and thereby upheld the doctrine under principles of stare decisis. *Id.* at 369.

¶ 20 Justice Lohr dissented in *Young*. *Id.* at 369–72 (Lohr, J., dissenting). He opined that the sudden emergency instruction is "unnecessary, confusing, and places undue emphasis on only a portion of the relevant facts in a negligence action." *Id.* at 369 (Lohr, J., dissenting). He also described the instruction's duplicative nature and minimal utility when read in context with the general negligence and reasonable care instructions that, in his opinion, "provide sufficient guidance for the jury to apply the reasonably careful person standard." *Id.* at 370 (Lohr, J., dissenting).

¶ 21 We continued to apply the sudden emergency doctrine after *Young* and did so recently in *Kendrick*, 252 P.3d at 1058. As stated above, we held in that case that competent evidence did not support the trial court's decision to instruct the jury on sudden emergency when the defendant anticipated that roads would be slick before she encountered an icy patch and slid into another vehicle. *Id.* at 1059. We therefore remanded the case to the court of appeals with instructions to remand for a new trial. *Id.* at 1067. In a dissenting opinion, Justice Eid disagreed with the majority's decision to remand for a new trial on sudden emergency grounds because the sudden emergency instruction "simply repeats the negligence formulation." *Id.* at 1071 (Eid, J., dissenting). She also opined that if "the majority believes that the instruction is more than an explanatory instruction," then, "the majority should simply abolish the doctrine altogether." *Id.* (Eid, J., dissenting) (citing *Young*, 814 P.2d at 372 (Lohr, J., dissenting) (arguing for the abolition of the doctrine)).

¶ 22 Although we applied the sudden emergency doctrine in *Kendrick*, the continued validity of the doctrine was not at issue in that case. *See id.* at 1058 n. 1 (the certiorari issue regarding the sudden emergency doctrine was "[w]hether the court of appeals erred in holding that a driver who loses control of a vehicle in winter driving conditions and collides with a vehicle stopped at a traffic light is entitled to a sudden emergency jury instruction"). Here, the issue of whether to abolish the sudden emergency doctrine is squarely before the Court. Accordingly, we now discuss our decision to abolish the doctrine.

## B. The Sudden Emergency Doctrine is Abolished

■ ¶ 23 Today we join numerous other jurisdictions[2] and abolish the sudden emer-

---

**2.** *See, e.g., Wiles v. Webb*, 329 Ark. 108, 946 S.W.2d 685, 689 (1997) (abolishing sudden emergency instruction); *Knapp*, 392 So.2d at 198–99 (same); *McClymont v. Morgan*, 238 Neb. 390, 470 N.W.2d 768, 772 (1991) (same); *Dunleavy v.*

*Miller*, 116 N.M. 353, 862 P.2d 1212, 1216–19 (N.M.1993) (same); *see also Lyons v. Midnight Sun Transp. Servs., Inc.*, 928 P.2d 1202, 1206 (Alaska 1996) (holding that sudden emergency instruction should rarely, if ever, be used); *Di-*

gency doctrine because its minimal utility in Colorado's comparative negligence scheme is greatly outweighed by the instruction's danger of misleading the jury. The principles of stare decisis provide that this Court will follow the rule of law it has established in earlier cases. *People v. Blehm,* 983 P.2d 779, 788 (Colo.1999) (collecting cases). We will depart from our precedent, however, "where sound reasons exist for doing so." *Id.* at 788–89 (citing *Creacy v. Indus. Comm'n,* 148 Colo. 429, 433, 366 P.2d 384, 386 (1961)). As detailed below, sound reasons exist to abolish the sudden emergency doctrine. We now turn to the first of these reasons: the doctrine's minimal utility.

### 1. Minimal Utility

¶ 24 The sudden emergency instruction has minimal utility for two reasons. First, the instruction is no longer necessary to serve the purpose for which it was originally enacted. *See Young,* 814 P.2d at 368. Courts developed the doctrine to "overcome the harsh effect of the former contributory negligence defense whereby a plaintiff's negligence acted as a complete bar to recovery." *Id.* The General Assembly adopted the modern comparative negligence statute, now codified at section 13–21–111, C.R.S. (2012), for the same reason: to diminish the harshness of the total bar to a plaintiff's recovery that formerly resulted when the plaintiff's negligence contributed to his or her injuries. *Young,* 814 P.2d at 368 (citing *Montgomery Elevator Co. v. Gordon,* 619 P.2d 66, 70 (Colo.1980)).

¶ 25 We recognized the diminished utility of the sudden emergency doctrine in *Young,* but nonetheless upheld the doctrine by concluding that the sudden emergency instruction "is consistent with this state's comparative negligence scheme." *Id.* We agree with our previous assessment that the sudden emergency instruction does not *conflict* with the modern comparative negligence scheme. We reject our former view, however, that this absence of conflict necessitates retaining the doctrine because, as we will discuss in

detail in the following section, the instruction's diminished utility in light of the comparative negligence statute is greatly outweighed by its potential to mislead the jury.

¶ 26 Second, the sudden emergency instruction does not enrich the body of negligence jury instructions. Instead, the sudden emergency instruction unnecessarily repeats the "reasonable care under the circumstances" standard articulated by two other pattern negligence instructions. *See Kendrick,* 252 P.3d at 1071 (Eid, J., dissenting) ("instruction simply repeats the negligence formulation—namely, that the jury should consider the defendant's conduct in light of the circumstances"); CJI–Civ. 4th 9:6 (defining "negligence" as acting in a way that "a reasonably careful person" would not "under the same or similar circumstances"); CJI–Civ. 4th 9:8 (defining "reasonable care" as the "degree of care which a reasonably careful person would use under the same or similar circumstances").

¶ 27 We reasoned in *Young* that the sudden emergency instruction clarified the applicable standard of care by explaining *how* the jury should specifically apply the reasonable care standard in sudden emergency situations. 814 P.2d at 368. The phrase "same or similar circumstances" in the general negligence and specific reasonable care instructions, however, sufficiently describes the standard of care and broadly encompasses *all* circumstances, including sudden emergencies. *See Kendrick,* 252 P.3d at 1071 (Eid, J., dissenting); *Bjorndal v. Weitman,* 344 Or. 470, 184 P.3d 1115, 1121 (2008) ("the usual instruction on negligence sufficiently covers what a reasonably prudent person would do under all circumstances, including those of sudden emergency" (citation omitted)). Therefore, the sudden emergency instruction is minimally useful because it is duplicative and adds virtually nothing to the corpus of negligence jury instructions.

### 2. Potential to Mislead the Jury

¶ 28 In addition to its minimal utility, the sudden emergency doctrine presents a seri-

*Cenzo v. Izawa,* 68 Haw. 528, 723 P.2d 171, 181 (1986) (strongly discouraging use of sudden emergency instruction); *Simonson v. White,* 220 Mont. 14, 713 P.2d 983, 989–90 (1986) (abolish-

ing sudden emergency instruction in automobile accident cases); *Bjorndal v. Weitman,* 344 Or. 470, 184 P.3d 1115, 1121 (2008) (same).

ous risk of misleading the jury because it: (1) fails to instruct the jury to find two important facts before applying the sudden emergency doctrine; (2) does not define the term "sudden emergency"; (3) implies that sudden emergency situations require a reduced standard of care; and (4) focuses the jury's attention on events that transpired during and after the emergency rather than on the totality of the circumstances. *See Young,* 814 P.2d at 372 (Lohr, J., dissenting) ("The instruction has only marginal utility but creates serious risk of misapplication and confusion."). We discuss each of these potentially misleading aspects of the sudden emergency doctrine in turn.

¶ 29 First, the instruction is premised upon two key facts: (1) that there was a sudden emergency; and (2) that the emergency was not caused by the allegedly-negligent party. *See* CJI-Civ. 4th 9:11 ("A person who, through *no fault of his or her own,* is placed in a *sudden emergency,* is not chargeable with negligence if the person exercises that degree of care that a reasonably careful person would have exercised under the same or similar circumstances." (emphasis added)). The instruction does not, however, specifically charge the jury with determining whether or not the evidence establishes these two premises. *See id.* The jury could therefore interpret the instruction as an affirmative finding by the trial court that an emergency indeed existed, and that the allegedly-negligent party played no role in creating that emergency.

¶ 30 For example, in this case, the jury could have interpreted the sudden emergency instruction as a finding by the trial court that Johnson's actions leading up to the snow patch did not contribute to his loss of control, even though some evidence tended to show that Johnson may have been speeding or intoxicated. Such an interpretation would unfairly benefit the allegedly-negligent party—here, Johnson—because the jury would not have to consider whether that party's conduct caused the emergency, or even if the emergency actually occurred.

¶ 31 Second, even if the jury interpreted the instruction to require these two initial factual findings, the instruction does not de-

fine "sudden emergency." Therefore, the jury is left to its own devices to determine whether or not a "sudden emergency" occurred in each case. This lack of guidance can not only lead to inconsistent results among cases, but might also result in prejudice depending on how the jury defines the term.

¶ 32 In addition, the sudden emergency instruction can lead the jury to incorrectly apply a less stringent standard of care. *Young,* 814 P.2d at 371 (Lohr, J., dissenting); *Dunleavy v. Miller,* 116 N.M. 353, 862 P.2d 1212, 1218 (1993). When given with the general negligence and reasonable care instructions, the separate sudden emergency instruction can imply to the jury that a sudden emergency gives rise to a different standard of care; otherwise there would be no need for a separate instruction. *Young,* 814 P.2d at 371 (Lohr, J., dissenting). Moreover, if the trial court instructs on sudden emergency after instructing the jury on general negligence and on the specific reasonable care standard, as it did in this case, the jury might interpret the sudden emergency instruction as an exception to or modification of the previously-described general standard of care. *See Knapp,* 392 So.2d at 198 ("The emergency rule is not an exception to the general rule requiring reasonable care." (citation omitted)). Such an interpretation could prejudice the party alleging negligence by misleading the jury to apply a reduced standard of care in sudden emergency situations.

¶ 33 Finally, the sudden emergency instruction can unduly focus the jury's attention on the allegedly-negligent party's actions during and after the emergency rather than on the totality of the circumstances. *Young,* 814 P.2d at 371 (Lohr, J., dissenting); *Simonson v. White,* 220 Mont. 14, 713 P.2d 983, 989 (1986). As a result, the doctrine can lead the jury to ignore the allegedly-negligent party's actions *prior* to the sudden emergency. *Simonson,* 713 P.2d at 989 (" 'The circumstances' includes the pressure and split-second decision-making which accompanies the crisis prior to some automobile accidents."). Focusing on the allegedly-negligent party's actions during and after the

alleged emergency can prejudice the party alleging negligence by causing the jury to lose sight of the very negligence that caused the emergency in the first place. *Id.; see Young,* 814 P.2d at 371–72 (Lohr, J., dissenting); *Kline v. Emmele,* 204 Kan. 629, 465 P.2d 970, 973 (1970) (sudden emergency instruction might "cause the jury to lose sight of the negligence which caused the emergency").

¶ 34 These potentially misleading characteristics of the sudden emergency instruction greatly outweigh its minimal utility. Accordingly, we abolish the sudden emergency doctrine.

## V. Conclusion

¶ 35 We reverse the judgment of the court of appeals upholding the trial court's decision to instruct the jury on sudden emergency and remand for a new trial. The trial court abused its discretion because competent evidence did not support giving the sudden emergency instruction in this instance. Going forward, we abolish the sudden emergency doctrine because its potential to mislead the jury outweighs its minimal utility.

Justice EID dissents.

Justice BOATRIGHT dissents.

Justice EID, dissenting.

¶ 36 By abolishing the sudden emergency instruction in Colorado, the majority finishes what it started in *Kendrick v. Pippin,* 252 P.3d 1052 (Colo.2011), which substantially limited the scope of the sudden emergency doctrine. *Id.* at 1071 (Eid, J., dissenting). Because the instruction simply repeats the standard negligence formulation that the jury is to determine whether the defendant's conduct was reasonable under the circumstances, including circumstances that would amount to a sudden emergency, and because the trial court did not abuse its discretion in concluding that there was sufficient evidence of an emergency in this case to warrant the instruction, I respectfully dissent from the majority's opinion.

¶ 37 The majority sets forth three different grounds for its decision, none of which I find persuasive. First, the majority suggests that the sudden emergency doctrine has no place in this case because there was no evidence that Johnson took a particular action in response to the emergency. Maj. op. at ¶¶ 11–13; *but. see* dis. op. at ¶ 51 (Boatright, J.) (stating that there was evidence that Johnson attempted to correct his course after losing control). But a defendant can be deemed negligent for failing to take an action that she should have taken, just as she can be deemed negligent for taking an action that she should not have taken. In this instance, as the majority points out, "[t]he evidence here showed that Johnson lost control of his vehicle upon encountering the snow patch." Maj. op. at ¶ 13; *see also id.* at ¶ 3 ("An investigation of the scene revealed that Johnson lost control of his vehicle when he hit an icy patch of snow on the road."). Thus, the question is whether Johnson acted reasonably—either in taking or failing to take action—after he hit the ice patch and lost control of the vehicle. *See, e.g., Kendrick,* 252 P.3d at 1059 (holding that the jury must determine "whether the party's conduct was reasonable" under the circumstances). The jury said yes.

¶ 38 Second, the majority also suggests that an instruction was inappropriate here because Johnson was aware of the possibility that there might be snow on the road, just as the driver in *Kendrick* was aware of wintery driving conditions. Maj. op. at ¶ 13. But the majority omits the fact from its factual recitation that the weather was good and the roads were otherwise clear on the morning of the accident. The facts here are plainly distinguishable from those in *Kendrick,* where the court found that the emergency could not be sudden or unexpected because the driver started out in wintery driving conditions and placed her vehicle in four-wheel-drive in recognition of such conditions. 252 P.3d at 1060. Thus, the fact that the defendant in this case was "aware of the possibility that snow and ice might be on the road in the vicinity of the snow patch," maj. op. at 13, does not preclude a sudden emergency instruction. *See Kendrick,* 252 P.3d at 1060 (explaining that general awareness of road conditions does not preclude instruction); *id.* at 1070 (Eid, J., dissenting) (same).

¶ 39 Finally, the majority suggests that the sudden emergency instruction could have misled the jury in this case into ignoring whether Johnson caused the accident by his conduct that occurred prior to hitting the ice patch. Maj. op. at ¶¶ 14, 30. Given the record in this case, it is difficult to see how this could have happened. The theory of Bedor's case was that the Johnson brought the accident about in the first place, either by driving while intoxicated, or by speeding. The bulk of evidence during the three days of testimony was devoted to this issue, and included testimony by numerous experts. Given the focus of the trial and Bedor's theory of the case, it is highly unlikely that the jury would conclude that it should ignore Johnson's pre-ice patch conduct.

¶ 40 Moreover, the jury was expressly instructed that "[a] person who, *through no fault of his or her own,* is placed in a sudden emergency, is not chargeable with negligence if the person exercises that degree of care that a reasonably careful person would have exercised under the same or similar circumstances." (Emphasis added). Thus, the jury's attention was expressly drawn to the fact that Johnson must have been placed in the emergency "through no fault of his or her own," and then must have acted reasonably under the circumstances. As the majority recognizes in this case, the evidence regarding Johnson's pre-ice patch conduct amounted to "some evidence" of negligence that was "inconclusive." *Id.* Here, resolution of the issue was properly left to the jury.

¶ 41 I have written elsewhere that the sudden emergency doctrine simply repeats the negligence formulation—that is, that the jury should consider whether the defendant acted reasonably under the circumstances, including circumstances that amount to a sudden emergency. *Kendrick,* 252 P.3d at 1071 (Eid, J., dissenting). Given this understanding, I would affirm the court of appeals' conclusion that Johnson presented sufficient evidence to warrant a sudden emergency instruction and therefore the trial court did not abuse its discretion in giving the instruction in this case. Accordingly, I respectfully dissent from the majority's opinion.

Justice BOATRIGHT, dissenting.

¶ 42 The majority abolishes the sudden emergency instruction in Colorado negligence law because it states that this legal principle's potential to mislead the jury greatly outweighs its minimal utility. Maj. op. at ¶ 34. Our earlier precedent rejected this view because we determined this doctrine was helpful to the jury. Nothing has changed since we reached this conclusion and stare decisis dictates that we continue to give effect to our earlier pronouncements. In addition, the majority found the trial court abused its discretion when it instructed the jury on the sudden emergency doctrine. Maj. op. at ¶ 14. I disagree. Hence, I respectfully dissent.

## I.

¶ 43 The sudden emergency doctrine recognizes "that a person confronted with sudden or unexpected circumstances calling for immediate action is not expected to exercise the judgment of one acting under normal circumstances." *Young v. Clark,* 814 P.2d 364, 365 (Colo.1991) (citing W.P. Keeton, et al., *Prosser and Keeton on the Law of Torts* § 33, at 196 (5th ed. 1984)). The majority accepts that the pattern instruction given by the trial court correctly informed the jury on the sudden emergency doctrine. Maj. op. at ¶ 9. Nevertheless, the majority questions the rationale behind providing a jury with a separate instruction concerning sudden emergencies. Maj. op. at ¶¶ 27–33. It concludes that the potentially misleading characteristics of the sudden emergency instruction greatly outweigh its minimal utility, and it abolishes the doctrine. Maj. op. at ¶ 34.

¶ 44 Recently, this court addressed the applicability of the sudden emergency doctrine in a similar case, *Kendrick v. Pippin,* 252 P.3d 1052, 1059 (Colo.2011). In that case, we held that the trial court erroneously instructed the jury on the sudden emergency doctrine because it was unsupported by the facts. *Id.* at 1060. However, we explained that "[w]here a party presents 'competent evidence ... that [she] was confronted with a sudden or unexpected occurrence not of the party's own making,' the law entitles that party to a sudden emergency instruction."

*Id.* at 1059 (quoting *Young*, 814 P.2d at 365) (second substitution in original). In so doing, we affirmed the doctrine's viability, which was consistent with the nearly sixty years of our jurisprudence that has passed since the doctrine was established in *Ridley v. Young*, 127 Colo. 46, 253 P.2d 433 (1953).

¶ 45 *Kendrick* is not our sole encounter with the sudden emergency doctrine since *Ridley*. In *Young v. Clark*, we analyzed the sudden emergency doctrine at length. 814 P.2d at 367–69. Our analysis addressed the majority's present concerns over the instruction's lack of utility and potential to mislead the jury. *See id.* at 367–68. However, unlike the majority today, we concluded that the sudden emergency doctrine remained viable. *Id.* at 369. We did not abandon the doctrine in the face of concerns over utility and possible juror confusion because we determined that the sudden emergency instruction clarifies the reasonable person standard for the jury's benefit:

> [C]ourts generally have denounced the usefulness of the sudden emergency instruction based upon a perceived hazard that the doctrine tends to elevate its principles above what is required to be proven in a negligence action, reasoning that even the wording of a well-drawn instruction intimates that ordinary rules of negligence do not apply to the circumstances constituting the claimed sudden emergency.
>
> Such reasoning, in our view, is based on unfounded assumptions about how jurors perceive an instruction explaining the relatively simplistic sudden emergency doctrine. The pattern instruction used by Colorado courts ... is a clear statement of the doctrine and obligates the finder of the fact to do nothing more than apply the objective "reasonable person" standard to an actor in the specific context of an emergency situation. It thus does not operate to excuse fault but merely serves as an explanation instruction, offered for purposes of clarification for the jury's benefit.

*Id.* at 367 (internal quotations and citations omitted). Hence, the majority's concerns are resolved by our established precedent in *Young*. In my view, no substantive changes have occurred since *Young* was decided in 1991 to invalidate its rationale or to support the abolition of the doctrine today.

¶ 46 Under the principle of stare decisis, I would therefore leave the sudden emergency doctrine intact. Stare decisis is a fundamental principle of the rule of law. It serves to promote stability, certainty, and uniformity of judicial decisions. *See In re Title, Ballot Title, Submission Clause, Summary for 1999–2000 No. 29*, 972 P.2d 257, 262 (Colo. 1999). Courts should follow the rule of law established in earlier cases unless clearly convinced that the rule was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come from departing from precedent. *People v. Blehm*, 983 P.2d 779, 788 (Colo. 1999). Although stare decisis is not an inflexible or immutable rule, departure from precedent should only occur "where sound reasons exist and where the general interests will suffer less by such departure than from strict adherence." *Creacy v. Indus. Comm'n*, 148 Colo. 429, 433, 366 P.2d 384, 386 (1961).

¶ 47 The majority states that the instruction's potential to mislead the jury and its lack of substantial utility provide sound reasons to abolish the doctrine. Maj. op. at ¶ 34. However, these reasons were identified by the dissent in *Young* and then rejected by the majority. *Young*, 814 P.2d at 368; *id.* at 369–72 (Lohr, J., dissenting). Nothing has changed in the interim.

¶ 48 The sudden emergency doctrine has been a viable part of our jurisprudence since *Ridley* was decided in 1953. Faced with the same concerns expressed by the majority today, we retained the sudden emergency doctrine in *Young*, and we implicitly reaffirmed the doctrine's viability in *Kendrick*. In my view, *Ridley*, *Young*, and *Kendrick* should be followed today. This case does not pose circumstances in which that precedent need be overruled.

## II.

¶ 49 The majority also concludes that the competent evidence produced at trial did not support the trial court's decision to instruct

the jury on sudden emergency. Maj. op. at ¶ 14. I disagree.

¶ 50 A trial court has a duty to properly instruct the jury on law applicable to the case if there is evidence in the record to support it. *Garhart ex rel. Tinsman v. Columbia/Healthone, L.L.C.,* 95 P.3d 571, 588 (Colo. 2004). We review an evidentiary finding by the trial court that sufficient evidence exists to justify giving a particular jury instruction for abuse of discretion. *Steward Software Co. v. Kopcho,* 266 P.3d 1085, 1087 (Colo.2011). A trial court's decision to give a particular instruction is an abuse of discretion only if manifestly arbitrary, unreasonable, or unfair. *Day v. Johnson,* 255 P.3d 1064, 1067 (Colo. 2011). Under this standard, "[i]t is not necessary that we agree with the trial court's decision." *General Steel Domestic Sales, LLC v. Bacheller,* 2012 CO 68, ¶ 42, 291 P.3d 1 (quoting *Streu v. City of Colorado Springs,* 239 P.3d 1264, 1268 (Colo.2010)). The trial court's decision to provide the instruction "simply must not exceed the bounds of the rationally available choices." *See id.* (quoting *Big Sky Network Can., Ltd. v. Sichuan Provincial Gov't,* 533 F.3d 1183, 1186 (10th Cir.2008)) (internal quotations omitted).

¶ 51 The majority accurately identifies evidence that militates against giving the sudden emergency instruction in this case. Maj. op. at ¶¶ 13–14. However, competent evidence in the record suggests that the instruction was appropriate. Mr. Johnson testified that he was not specifically aware of the ice patch and that the road leading up to the ice was dry. More importantly, expert accident reconstruction testimony indicated that Mr. Johnson attempted to correct his course after losing control of his vehicle. A reasonable inference from that evidence is that Mr. Johnson reacted to a sudden and unexpected circumstance that was not of his own making. In my view, sufficient evidence existed to justify giving the sudden emergency instruction, and the trial court's decision to do so was not outside the bounds of the rationally available choices.

### III.

¶ 52 Because of the doctrine of stare decisis, I would continue to approve giving the sudden emergency instruction where supported by competent evidence. For that reason, and because I believe that the trial court's decision to give the sudden emergency instruction was not an abuse of its discretion under these facts, I would affirm the court of appeals. Accordingly, I respectfully dissent.