SUMMARY September 5, 2024 2024COA100 Nos. 23CA0659 & 23CA0191, Azar v. Ngo — Attorneys and Clients — Rules of Professional Conduct — Restrictions on Right to Practice — Restriction on Right to Practice after Termination A division of the court of appeals concludes, for the first time in a Colorado appellate decision, that an employment agreement provision prohibiting an attorney at a law firm, while still employed by the firm, from soliciting fellow employees to leave the law firm is not an agreement that “restricts the right of a lawyer . . . to practice after termination of the relationship,” as prohibited by Colorado Rule of Professional Conduct 5.6(a).
The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion. 
 COLORADO COURT OF APPEALS 2024COA100 Court of Appeals Nos. 23CA0659 & 23CA0191 City and County of Denver District Court No. 20CV30785 Honorable David H. Goldberg, Judge Franklin D. Azar & Associates P.C., a Colorado corporation, Plaintiff-Appellee, v. Ivy Ngo, Defendant-Appellant, v. Franklin D. Azar, Third-Party Defendant-Appellee. JUDGMENT AND ORDERS AFFIRMED AND CASE REMANDED WITH DIRECTIONS Division VII Opinion by JUDGE TOW Gomez and Kuhn, JJ., concur Announced September 5, 2024 Sherman & Howard L.L.C., Tamir Goldstein, Denver, Colorado, for Plaintiff-
Appellee and Third-Party Defendant-Appellee Azizpour Donnelly, LLC, Katayoun A. Donnelly, Denver, Colorado, for Defendant-Appellant 
 1 ¶ 1 Defendant, Ivy Ngo, appeals the judgment entered against her and in favor of plaintiff, Franklin D. Azar & Associates P.C. (the Azar firm) and counterclaim defendant, Franklin D. Azar (Azar).
1 This appeal requires us to consider, for the first time in a Colorado appellate decision, whether an employment agreement provision prohibiting an attorney at a law firm from soliciting fellow employees to leave the law firm is an agreement that “restricts the right of a lawyer . . . to practice after termination of the relationship,” as prohibited by Colorado Rule of Professional Conduct 5.6(a). We conclude that, to the extent it prohibited such solicitation during Ngo’s employment, the agreement did not violate Rule 5.6(a) and thus was enforceable. We therefore affirm the judgment. 1 As will be discussed more thoroughly below, Azar was not a plaintiff in the initial action. When pleading her counterclaims against the Azar firm, Ngo also brought claims against Azar individually. Although more correctly considered a third-party defendant, because the parties and the trial court referred to Azar throughout the proceedings as an additional counterclaim defendant, we do so as well. 
 2 ¶ 2 Ngo also appeals the post-trial orders granting the Azar firm attorney fees and costs. We affirm the orders and remand the case for further proceedings. I. Background ¶ 3 Ngo was the head of the class action department at the Azar firm. When she was hired, Ngo signed an agreement entitled “Confidentiality, Non-Disclosure, and Non-Solicitation Agreement” (the Confidentiality Agreement). The Confidentiality Agreement contained three restrictive provisions: an agreement not to disclose or use proprietary information (the nondisclosure provision), an agreement not to solicit or induce the firm’s employees to leave the firm (the employee nonsolicitation provision), and an agreement not to solicit clients of the firm (the client nonsolicitation provision). Ngo also signed an “Employment Agreement,” which contained a noncompete covenant and provided that she would abide by the Confidentiality Agreement. ¶ 4 After working at the Azar firm for approximately two years, Ngo began making plans to leave and hoped to make the move with the rest of the class action department. To that end, she emailed a slide deck presentation to other law firms designed to convince the 
 3 firms to take her department on as a Denver office. When the Azar firm learned of her actions, it fired her. Four months later, Ngo began working at a new law firm. ¶ 5 The Azar firm sued Ngo for breach of contract and breach of fiduciary duty. Ngo initially moved to dismiss for failure to state a claim. While that motion was pending, discovery proceeded, through which the Azar firm discovered the identity of certain law firms to which it believed Ngo had sent her slide deck proposal. The Azar firm, through counsel, sent letters to those firms informing them of the lawsuit and that Ngo appeared to have disclosed confidential information to them. ¶ 6 After the court denied her motion to dismiss, Ngo answered the complaint and asserted counterclaims against both the Azar firm and Azar individually including, as relevant here, (1) a defamation claim based on the letters the Azar firm sent to the firms as well as statements Azar and the Azar firm made to clients, Ngo’s former colleagues, and Ngo’s potential future employers; and (2) a declaratory judgment claim. The latter claim sought a declaration that the nondisclosure and client nonsolicitation provisions were unenforceable because they violated Rule 5.6(a) of 
 4 the Colorado Rules of Professional Conduct — which prohibits agreements that restrict an attorney’s practice of law after leaving employment.
2 ¶ 7 Ngo filed a partial motion for summary judgment on the Azar firm’s breach of contract and breach of fiduciary duty claims, as well as her declaratory judgment counterclaim. The trial court partially granted the motion as to the declaratory judgment counterclaim, concluding that the client nonsolicitation provision violated Rule 5.6(a) and was thus unenforceable. The court also concluded that the nondisclosure provision did not cover Ngo’s “mental impressions, thoughts, methodologies, philosophies, and strategies developed during her work as an attorney for any client she worked with before or after her departure” from the Azar firm. The court denied Ngo’s request for declaratory judgment in all other respects. The court also dismissed the breach of fiduciary duty claim as barred by the economic loss rule.
3 The court denied Ngo’s request for summary judgment on the breach of contract claim. 2 Notably, Ngo’s declaratory judgment claim did not explicitly address the employee nonsolicitation provision. 3 The Azar firm does not cross-appeal this dismissal. 
 5 ¶ 8 Azar and the Azar firm also filed a motion for summary judgment seeking, as relevant here, judgment against Ngo on her defamation counterclaim. The trial court denied the motion, concluding that disputed issues of fact precluded summary judgment on whether the litigation privilege or substantial truth defenses applied. ¶ 9 The Azar firm’s breach of contract claim and Ngo’s defamation claim were tried to a jury. Following the presentation of evidence, both parties moved for a directed verdict. The trial court determined that the letters the Azar firm had sent to the law firms could not give rise to a defamation claim because they were protected by the litigation privilege. It accordingly modified the jury instructions to state that the letters did not constitute defamatory statements but otherwise allowed the defamation claim to go to the jury. The trial court also denied the directed verdict as to the breach of contract claim, noting that it had previously concluded that the employee nonsolicitation provision did not violate Rule 5.6. ¶ 10 As to the Azar firm’s breach of contract claim, the jury was provided a general verdict form asking whether Ngo had breached the Employment Agreement and whether she had breached the 
 6 Confidentiality Agreement. The jury was then told that if the answer to either of these two questions was yes, it should determine whether the Azar firm “ha[d] damages as a result of Ngo’s breach of contract.” Neither the breach portion nor the damages portion requested the jury to allocate specific damages to specific alleged breaches, such as to a violation of the nondisclosure provision as opposed to the employee nonsolicitation provision. The jury found that Ngo had breached both agreements and awarded Azar $4,000 in damages. The jury also returned a verdict in favor of Azar and the Azar firm on the defamation counterclaim. ¶ 11 Pursuant to fee-shifting provisions in the agreements, the Azar firm requested $1,907,546.50 in attorney fees and $138,380.33 in costs. Ngo opposed the request, arguing that in light of the modest verdict, the Azar firm should not be considered the prevailing party and that, in any event, the amount requested was unreasonable. The trial court issued two orders, awarding the Azar firm $1,072,991.00 in attorney fees and $106,660.70 in costs. II. Ngo’s Challenges to the Judgment ¶ 12 Ngo appeals the judgment, contending that the trial court erred by (1) concluding that the employee nonsolicitation provision 
 7 did not violate Rule 5.6; (2) refusing to instruct the jury on the employee preparation privilege on the breach of contract claim; and (3) applying the litigation privilege to the letters the Azar firm sent to the law firms and accordingly modifying the jury instructions on the defamation claim. We discern no error. A. Employee Nonsolicitation Provision ¶ 13 Ngo contends that the trial court erred by allowing the part of the breach of contract claim premised on her solicitation of employees to go to the jury. She argues that, as a matter of law, the employee nonsolicitation provision in the Confidentiality Agreement was unenforceable because it violated Rule 5.6(a). 1. Standard of Review and Applicable Law ¶ 14 We review de novo interpretations of the Colorado Rules of Professional Conduct. Johnson Fam. L., P.C. v. Bursek, 2024 CO 1, ¶ 8. “Our interpretation of a rule is informed by the comments to that rule.” Id. ¶ 15 Rule 5.6(a) provides that “[a] lawyer shall not participate in offering or making . . . a partnership, shareholders, operating, employment, or other similar type of agreement that restricts the right of a lawyer or LLP to practice after termination of the 
 8 relationship, except an agreement concerning benefits upon retirement.” The language of Rule 5.6(a) plainly forbids any agreement that would entirely prohibit a lawyer from practicing law after departure from a firm. Johnson, ¶ 10. ¶ 16 Despite Rule 5.6(a)’s wording in terms of the lawyer’s right to practice, the rule has “twin policy goals . . . : to protect lawyers’ professional autonomy and to ensure that clients have the freedom to choose an attorney.” Id. at ¶ 14; see also Colo. RPC 5.6 cmt. 1 (noting that an agreement entirely prohibiting a lawyer from practicing law “not only limits [an attorney’s] professional autonomy, but also limits the freedom of clients to choose a lawyer”). Recently, the Colorado Supreme Court agreed with other courts that Rule 5.6(a) is “designed primarily to protect client choice.” Johnson, ¶ 17. 2. The Effect of the General Verdict ¶ 17 Given that the evidence would amply support a determination that Ngo breached the nondisclosure provision, we asked the parties to provide supplemental briefs on the impact of the general verdict on any ultimate harmlessness analysis. After all, if any error in permitting the jury to consider the employee nonsolicitation 
 9 provision was ultimately harmless, we would not need to reach the merits of the dispute at all. ¶ 18 Many years ago, the Colorado Supreme Court held that, when a civil claim is submitted to a jury on two grounds for relief, one of which is legally valid and the other not, “it is impossible to determine from the general verdict returned, upon which theory the jury found for [the] plaintiff. In such circumstances prejudice to [the] defendant must be presumed.” Mosher v. Schumm, 166 P.2d 559, 561 (Colo. 1946). We find no intervening case law that calls this venerable proposition into question. Accordingly, we must determine whether the trial court erred by submitting to the jury the question of whether Ngo breached the employee nonsolicitation provision. 3. Analysis ¶ 19 We begin by noting the narrowness of the issue before us. All of the evidence involving Ngo soliciting fellow employees focused on her conduct before she left the Azar firm. Accordingly, we assume without deciding that the employee nonsolicitation provision would run afoul of Rule 5.6(a) to the extent that it prohibited Ngo from soliciting employees after her departure from the firm. The question 
 10 before us, however, is limited to whether Rule 5.6(a) prohibited the Azar firm from offering, and Ngo from accepting, a contractual provision requiring Ngo to refrain from soliciting her fellow employees while she was still employed by the firm.
4 We conclude that it did not. ¶ 20 Under common law, “an employee breaches his duty of loyalty if prior to the termination of his own employment, he solicits his co-employees to join him in his new competing enterprise.” Jet Courier Serv., Inc. v. Mulei, 771 P.2d 486, 494 (Colo. 1989). Though no Colorado appellate decision has addressed whether this common law duty of loyalty applies in the law firm context, decisions from other states’ courts have. See, e.g., Dowd & Dowd, Ltd. v. Gleason, 816 N.E.2d 754, 765, 770-72 (Ill. App. Ct. 2004) (affirming multi-
million-dollar judgment against attorneys whose breaches of the 4 To the extent there is an argument that the employee nonsolicitation provision was overly broad because it, by its terms, also prohibited Ngo from soliciting employees of the Azar firm after she left, Ngo does not argue that the trial court erroneously judicially modified — or “blue penciled” — the agreement. Because Ngo does not raise the issue of the scope of the trial court’s authority to sever unenforceable provisions from enforceable ones, we do not address it. See Johnson Fam. L., P.C. v. Bursek, 2024 CO 1, ¶ 24. 
 11 duty of loyalty included, while still at the firm, orchestrating a mass exodus of attorneys from the firm at the same time the defendant attorneys left); Gibbs v. Breed, Abbott & Morgan, 710 N.Y.S.2d 578, 583 (App. Div. 2000) (holding that partners soliciting co-employees before leaving the firm breached the duty of loyalty owed by partners to each other). ¶ 21 If Ngo had a common law duty to refrain from soliciting co-employees before her departure from the firm, it makes little sense to suggest that she could not essentially reiterate that duty by making a contractual promise to the same effect — unless, that is, doing so would act as a restriction on her or another lawyer’s “right to practice” after her employment with the Azar firm terminated. Ngo says that the predeparture employee nonsolicitation provision in the Confidentiality Agreement acts as such a restriction because it impermissibly restricts her right to form, and practice in, teams of her and her clients’ choice after termination. We are not persuaded. ¶ 22 As noted, the Rule 5.6(a) inquiry focuses on both client choice and attorney autonomy. Ngo’s contention focuses on the latter, but we will address both. 
 12 ¶ 23 As applied to predeparture conduct, the employee nonsolicitation provision did not significantly impact Ngo’s ability to practice after her employment with the firm ended. First, the provision only prohibited her from soliciting or inducing her fellow employees to leave the Azar firm. Nothing in the provision prevented Ngo’s fellow employees, upon learning of her impending departure, from expressing their own interest in joining her. And, again assuming that the employee nonsolicitation provision would not be enforceable under Rule 5.6(a) after she left her employment, Ngo would be free to recruit her former coworkers to join her at her new firm, allowing her to build the team she sought. ¶ 24 Nor does a predeparture employee nonsolicitation provision significantly implicate client choice. Any client who wished for Ngo to be their attorney could have chosen to retain her regardless of which attorneys (or paralegals or support staff) elected to accompany her departure from the firm. And any client who desired to retain one of the other attorneys could certainly have chosen to retain whichever firm that attorney worked for. To the extent a client might have wanted to insist that one of Ngo’s former Azar firm colleagues join Ngo and represent the client as a team, 
 13 that simply exceeds the reach of the client’s choice. Even at the zenith of its protection, client choice does not empower a client to demand that a particular firm hire a particular lawyer or, conversely, that a particular lawyer agree to work for a particular firm; nor, for that matter, can either Ngo or any former colleague force such a scenario into existence in the name of lawyer autonomy. See Howard v. Babcock, 863 P.2d 150, 158-59 (Cal. 1993) (recognizing the practical limitations on the “theoretical freedom” of each lawyer to choose whom to represent and of each client to select their attorney of choice, as well as the fact that an attorney “has no right to enter into employment or partnership in any particular firm”). ¶ 25 Further, this provision did not prohibit other attorneys from continuing to represent a particular client; rather, it prohibited Ngo’s solicitation or inducement of such an attorney (before Ngo left her employment) to leave the Azar firm with her. If an attorney chose to leave the firm on their own, or the client solicited them to do so, nothing in the agreement prohibited that attorney from continuing to represent the client along with Ngo. 
 14 ¶ 26 We are not persuaded otherwise by the cases on which Ngo relies. Those cases involve employment agreements with some type of financial disincentive provision for a departing attorney taking clients or employees of the firm with them. See Johnson, ¶ 15 (concluding that a fee imposed on a per client basis, based not on specific spending for a client and without any individualized assessment, violates Rule 5.6(a)); Law Offs. of Ronald J. Palagi, P.C., LLO v. Howard, 747 N.W.2d 1, 26 (Neb. 2008) (concluding that a provision providing that if a listed client of the firm chose to have the terminated lawyer represent them, then all attorney fees would be paid to the firm — not the lawyer — was unenforceable because it provided a strong financial disincentive for the lawyer to perform services for a former client and therefore restricted the client’s right to retain the lawyer); Jacob v. Norris, McLaughlin & Marcus, 607 A.2d 142, 153-54 (N.J. 1992) (invalidating under New Jersey’s version of Rule 5.6(a) a provision requiring forfeiture by a departing law firm partner of otherwise payable termination compensation if the departing partner solicits other professional or paraprofessional employees of the firm to engage in the practice of law with the departing partner). The agreements at issue in these cases are 
 15 materially different from the Confidentiality Agreement and Employment Agreement, neither of which contains a financial disincentive provision. ¶ 27 To the extent Ngo contends that the attorney fees provision is a financial disincentive provision, we disagree. It is not an automatically applicable financial penalty tied to clients who follow her or coworkers who opt to join her at her new firm. Rather, it is a fee-shifting provision that comes into play only after she is found to have breached her enforceable promises. As such, it is not akin to the financial disincentive provisions present in the authorities on which she relies. ¶ 28 In sum, before Ngo left the Azar firm, the employee nonsolicitation provision was at most a de minimis restriction on her autonomy and did not impair client choice. Accordingly, the trial court did not err by concluding that, as applied to her predeparture conduct, the employee nonsolicitation provision did not violate Rule 5.6. 
 16 B. Jury Instruction on Employee Preparation Privilege ¶ 29 Ngo next contends that the trial court erred by refusing to instruct the jury on the employee preparation privilege. We disagree. 1. Additional Background ¶ 30 Ngo tendered a jury instruction stating that Colorado law permits employees to make arrangements to compete with their employers prior to separation from employment. The trial court declined to give the jury this instruction. 2. Standard of Review ¶ 31 We review de novo whether the jury instructions correctly stated the law. Bedor v. Johnson, 2013 CO 4, ¶ 8. “If they did, we review the trial court’s decision to give or reject a particular jury instruction for an abuse of discretion.” Danko v. Conyers, 2018 COA 14, ¶ 54. 3. Analysis ¶ 32 Ngo relies on Jet Courier for the proposition that the law permits her to prepare to compete against her employer before she leaves that employment. The Azar firm counters that the exception at issue in Jet Courier protects an employee from liability in tort, 
 17 see 771 P.2d at 497, but that such a privilege is inapplicable to its breach of contract claim. We agree with the Azar firm. ¶ 33 The employee preparation exception in Jet Courier applied to a breach of fiduciary duty claim, not a breach of contact claim. Id. at 491, 493-95, 497. As noted, though the Azar firm initially pleaded a breach of fiduciary duty claim, the trial court granted Ngo’s request to dismiss that claim. Ngo has not cited any Colorado authority, nor are we aware of any, that applies the employee preparation privilege to a breach of a contractual employee nonsolicitation provision. Other jurisdictions have recognized that a party can bargain away their ability to prepare to compete by agreeing to restrictive covenants in an employment agreement. See, e.g., Williams v. Dominion Tech. Partners, L.L.C., 576 S.E.2d 752, 757 (Va. 2003) (“[I]n the absence of a contract restriction regarding this duty of loyalty [specifically, the duty to not compete with one’s employer — including by recruiting co-employees — while still employed], an employee has the right to make arrangements during his employment to compete with his employer after resigning his post.”) (emphasis added). Thus, the trial court did not err by 
 18 declining to instruct the jury using Ngo’s tendered employee preparation instruction on the breach of contract claim. C. Litigation Privilege ¶ 34 Finally, Ngo contends that the trial court erred by applying the litigation privilege to the letters the Azar firm sent to the law firms and by instructing the jury that these letters did not constitute defamatory statements. We disagree with both contentions. 1. Additional Background ¶ 35 As noted, after terminating Ngo and filing its complaint, the Azar firm learned through discovery that Ngo had sent the slide deck presentation to several law firms. Based on this information, the Azar firm sent letters to law firms that it believed received the presentation from Ngo. Relevant to this appeal, the Azar firm sent a letter to Squire Patton Boggs and to Boies Schiller Flexner.
5 ¶ 36 Both letters stated in relevant part that [i]t is [the Azar firm]’s understanding that Ms. Ngo contacted you regarding possibly joining your firm, and that as part of this process, she provided you with information regarding [the 5 Ngo only challenges the letters sent to Squire Patton Boggs and Boies Schiller Flexner because they were the only law firms that did not relay information back to the Azar firm in response to receiving the letters. 
 19 Azar firm]’s class action clients and cases. We have learned that some information disseminated by Ms. Ngo contained confidential client information including settlement amounts and details. We have also learned that Ms. Ngo disclosed certain information regarding clients and cases that Ms. Ngo may have represented comprised her “book of business,” but included matters developed by [the Azar firm] though not yet filed, which she was not authorized to do. To ensure that there are no misunderstandings or inadvertent disclosures of the information and data provided to your firm or its attorneys by Ms. Ngo, please return any and all documents you received from Ms. Ngo, including documents that do not appear to contain client information, as such a determination must be made by [the Azar firm]. ¶ 37 The Azar firm sent the letter to Squire Patton Boggs after discovering a text message sent by an Azar firm employee (who was privy to Ngo’s plan to leave the firm and take the class action department with her) to another employee: “But yeah fingers crossed SPB or a big plaintiffs’ firm comes through just in case.” The employee testified that he wanted to keep working in the Azar firm’s class action department and felt he was in a position of trust with the Azar firm to advocate for the department if Azar was 
 20 considering shutting it down,
6 but he would be open to other possibilities “if something else came along like a big plaintiffs’ firm or SPB, Squire Patton Boggs, you know as a backup.” ¶ 38 The Azar firm sent the letter to Boies Schiller Flexner after learning that lawyers from that firm had also recently joined Ngo’s new firm. 2. Standard of Review and Applicable Law ¶ 39 The litigation privilege is an absolute privilege that permits an attorney to “publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which [the attorney] participates as counsel, if it has some relation to the proceeding.” Killmer, Lane & Newman, LLP v. BKP, Inc., 2023 CO 47, ¶ 21 (quoting Restatement (Second) of Torts § 586 (Am. L. Inst. 1977)). ¶ 40 Relevant here, a statement must satisfy two conditions for the privilege to apply: (1) the statement must have some relation to the 6 Ngo allegedly told her fellow employees that Azar was going to shutter the class action department because it was not profitable; Azar denied any such plans. 
 21 subject matter of the litigation, and (2) the statement must be made in furtherance of the objective of the litigation. Id. at ¶ 24. ¶ 41 We review de novo whether the litigation privilege applies. Id. at ¶ 18. In doing so, we resolve all doubts about whether a statement is privileged “in favor of [the statement’s] relevancy or pertinency.” Id. at ¶ 25 (citation omitted). 3. Analysis ¶ 42 Ngo contends that the trial court erred by instructing the jury that the letters could not establish the claim for defamation because Squire Patton Boggs and Boies Schiller Flexner were neither “involved in nor closely connected with the litigation.” ¶ 43 Initially, we note that whether “the recipient must be involved in and closely connected with the proceeding” is no longer a prerequisite for the absolute litigation privilege to apply. See id. at ¶ 22. Although, in a decades-old case, a division of this court had included such a requirement, see Club Valencia Homeowners Ass’n v. Valencia Assocs., 712 P.2d 1024, 1027 (Colo. App. 1985), the Colorado Supreme Court recently said otherwise. Acknowledging that it had not yet spoken on the litigation privilege, the supreme court applied the articulation of the privilege set forth in section 
 22 586 of the Restatement (Second) of Torts, which does not include any requirement that “the recipient must be involved in and closely connected with the proceeding” for the litigation privilege to apply. See Killmer, Lane & Newman, ¶ 20. ¶ 44 We turn, then, to whether the letters satisfied the two conditions announced in Killmer, Lane & Newman. ¶ 45 First, the letters had some relation to the subject matter of the litigation. The complaint alleged that Ngo conspired to improperly transfer the Azar firm’s class action department to another law firm and that she had met with several other law firms and attempted to convince them to hire her, undertake representation of the Azar firm’s clients, and absorb the Azar firm’s entire class action department. The complaint also alleged that Ngo developed a presentation in which she divulged proprietary and confidential information in an attempt to move the class action practice to a competing firm. ¶ 46 Though the complaint does not mention Squire Patton Boggs or Boies Schiller Flexner (or any other law firm) by name, the letters sent to Squire Patton Boggs and Boies Schiller Flexner articulated the Azar firm’s understanding that Ngo had contacted them about 
 23 possibly joining their firms and that she had provided them with information about the Azar firm’s class action clients and cases, including confidential information. The letters also stated that Ngo had disseminated confidential settlement amounts and details and had represented that clients and cases compromised her “book of business” but included matters not yet filed. ¶ 47 The letters to Squire Patton Boggs and Boies Schiller Flexner clearly had “some relation to the subject matter” of the lawsuit — even though the statements therein went beyond the allegations of the complaint. See Coomer v. Donald J. Trump for President, Inc., 2024 COA 35, ¶ 190 (concluding that the statements at a press conference had “some relation to the subject matter” of the lawsuit even though the statements went well beyond the allegations in the complaint (quoting Killmer, Lane & Newman, ¶ 40)). ¶ 48 Second, the letters were made in furtherance of the objective of the litigation. The Azar firm reasonably believed, based on text messages and the fact that former Boies Schiller Flexner lawyers had joined Ngo at her new firm, that Ngo had sent the presentation to both firms. It was thus advancing its existing litigation objective by trying to preserve any evidence that Ngo breached the 
 24 Confidentiality Agreement and the Employment Agreement by disseminating the Azar firm’s confidential and proprietary information to other law firms. ¶ 49 Therefore, the trial court did not err by concluding that the litigation privilege applied and by modifying the jury instruction accordingly. III. Ngo’s Challenge to the Attorney Fees and Costs Orders ¶ 50 Ngo also appeals the attorney fees order and costs order. She contends that the fee-shifting provisions in the Confidentiality Agreement and Employment Agreement are an unreasonable financial disincentive that violates Rule 5.6 by impermissibly restricting clients’ right to choose their attorney as well as the attorney’s right to practice law. The Azar firm contends that Ngo did not preserve this contention as a challenge to the attorney fee award. We agree with the Azar firm. ¶ 51 Generally, to preserve an issue for appeal, the issue must be brought to the trial court’s attention and the court must be given the opportunity to rule on it. Berra v. Springer & Steinberg, P.C., 251 P.3d 567, 570 (Colo. App. 2010). “A party’s mere opposition to its adversary’s request . . . does not preserve all potential avenues 
 25 for relief on appeal.” Valentine v. Mountain States Mut. Cas. Co., 252 P.3d 1182, 1188 n.4 (Colo. App. 2011). We “review only the specific arguments a party pursued before the district court.” Id. ¶ 52 When opposing the Azar firm’s request for attorney fees and costs, Ngo did not argue that the fee-shifting provisions in the Confidentiality Agreement and Employment Agreement violated Rule 5.6. She only argued that the Azar firm should not be considered the prevailing party and that the amount requested was unreasonable.
7 ¶ 53 Ngo contends that she preserved this argument in her summary judgment motion, and since it was a pure question of law, she did not need to re-raise it once the trial court found that “the agreements in this case do not contain a financial disincentive provision.” Ngo cites no Colorado case to support this contention. Indeed, the supreme court has held that a denial of a motion for summary judgment, whether based on a question of law or the existence of disputed issues of material fact, is not appealable after a trial. Feiger, Collison & Killmer v. Jones, 926 P.2d 1244, 1250 7 Ngo does not advance either of these arguments on appeal. 
 26 (Colo. 1996); see also Credit Serv. Co. v. Skivington, 2020 COA 60M, ¶ 8; Tisch v. Tisch, 2019 COA 41, ¶ 48 (“[T]o preserve an issue raised in a denied motion for summary judgment, a party must raise the issue in a motion for a directed verdict or judgment notwithstanding the verdict during trial.”). ¶ 54 More importantly, Ngo does not cite any Colorado authority for her proposition that making an argument in a motion for summary judgment preserves the issue in an appeal of an attorney fees order or a costs order. Even if she did, Ngo’s argument in the summary judgment motion was that the fee-shifting provisions in the Confidentiality Agreement and Employment Agreement “impose[d] an unreasonable penalty on Ms. Ngo for representing a client.” (Emphasis added.) The court agreed with Ngo that the client nonsolicitation provision was unenforceable as a matter of law and partially granted summary judgment on her declaratory judgment counterclaim. Ngo did not argue that the fee-shifting provisions were unenforceable for any other reason. Thus, even if she could have preserved her argument in her motion for summary judgment, she failed to do so. 
 27 ¶ 55 To the extent Ngo suggests that her expert report and response to the Azar firm’s motion to exclude her expert report preserved this issue, we disagree. In neither the report nor the response did Ngo argue that the trial court should decline to award attorney fees and costs to the Azar firm because the fee-shifting provisions in the Confidentiality Agreement and Employment Agreement were unenforceable under Rule 5.6(a). ¶ 56 In sum, we conclude that Ngo failed to preserve this contention, and we decline to address it. See Banning v. Prester, 2012 COA 215, ¶ 24. Because Ngo raises no other challenge to the fees and cost orders, we affirm them. IV. Appellees’ Appellate Attorney Fees and Costs Requests ¶ 57 Azar and the Azar firm request appellate attorney fees and costs pursuant to C.A.R. 38(a), 39, and 39.1, as well as the fee-
shifting provisions in the Confidentiality Agreement and Employment Agreement. Because we affirm the judgment and orders, both appellees are entitled to costs pursuant to C.A.R. 39. However, we reject appellees’ requests for double costs because, though unsuccessful, we do not believe either appeal was frivolous as argued. 
 28 ¶ 58 In addition, the fee-shifting provisions in the agreements entitle the Azar firm to attorney fees related to its defense of its judgment for breach of contract. (Because Azar individually is not a party to the contract, he is not entitled to benefit from the fee-
shifting provisions.) We exercise our discretion and remand to the trial court to determine the amount of reasonable appellate costs and attorney fees to be awarded to the Azar firm, as well as reasonable costs to be awarded to Azar. V. Disposition ¶ 59 The judgment and orders are affirmed, and the case is remanded for further proceedings to establish reasonable costs and attorney fees on appeal. JUDGE GOMEZ and JUDGE KUHN concur.